APPEAL,CLOSED,TYPE−E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:24−cv−02970−PLF</u>
### *Internal Use Only*

SZ DJI TECHNOLOGY CO., LTD. v. U.S. DEPARTMENT OF DEFENSE et al

Assigned to: Judge Paul L. Friedman

Related Cases:   1:24−cv−01381−PLF

                        1:24−cv−02357−PLF

Cause: 05:702 Administrative Procedure Act

Date Filed: 10/18/2024
Date Terminated: 09/29/2025
Jury Demand: None
Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**SZ DJI TECHNOLOGY CO., LTD.**
       represented by    **Derek Lawrence Shaffer**
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street, NW
Suite 900
Washington, DC 20005
202−538−8000
Email: derekshaffer@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kannon K. Shanmugam**
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223−7300
Fax: (202) 223−7420
Email: kshanmugam@paulweiss.com
*TERMINATED: 11/27/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roberto J. Gonzalez**
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street NW
Washington, DC 20006
(202) 223−7300
Email: rgonzalez@paulweiss.com
*TERMINATED: 11/27/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel P. Nitze**

1

QUINN EMANUEL URQUHART &
SULLIVAN LLP
295 5th Ave
New York, NY 10016
212–849–7000
Email: samuelnitze@quinnemanuel.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Gates Williamson**
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
615–730–4810
Email: samwilliamson@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SZ DJI BAIWANG TECHNOLOGY
CO., LTD.,**                    represented by  **Samuel P. Nitze**
                                (See above for address)
                                *LEAD ATTORNEY*
                                *PRO HAC VICE*
                                *ATTORNEY TO BE NOTICED*

                                **Samuel Gates Williamson**
                                (See above for address)
                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. DEPARTMENT OF DEFENSE**     represented by  **Daniel Riess**
                                U.S. DEPARTMENT OF JUSTICE
                                1100 L Street NW
                                Washington, DC 20005
                                (202) 353–3098
                                Fax: (202) 616–8460
                                Email: daniel.riess@usdoj.gov
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE NOTICED*

                                **Kristina Ann Wolfe**
                                U.S. DEPARTMENT OF JUSTICE
                                Civil Division, Federal Programs Branch
                                P.O. Box 883
                                Ben Franklin Station
                                Washington, DC 20044
                                (202) 353–4519
                                Email: kristina.wolfe@usdoj.gov

*ATTORNEY TO BE NOTICED*

**Defendant**

**LLOYD J. AUSTIN, III**
*in his official capacity as SECRETARY*
*OF THE UNITED STATES*
*DEPARTMENT OF DEFENSE*
*TERMINATED: 03/03/2025*

represented by  **Daniel Riess**
(See for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LAURA D. TAYLOR–KALE**
*in her official capacity as ASSISTANT*
*SECRETARY OF DEFENSE FOR*
*INDUSTRIAL BASE POLICY*
*TERMINATED: 03/03/2025*

represented by  **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETER B. HEGSETH**
*in his official capacity as SECRETARY*
*OF THE UNITED STATES*
*DEPARTMENT OF DEFENSE*

represented by  **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Ann Wolfe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**VIC S. RAMDASS**
*Dr. in his official capacity as ACTING*
*ASSISTANT SECRETARY OF DEFENSE*
*FOR INDUSTRIAL BASE POLICY*

represented by  **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Ann Wolfe**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2024 | 1 | COMPLAINT against LLOYD J. AUSTIN III, LAURA D. TAYLOR–KALE, U.S. DEPARTMENT OF DEFENSE ( Filing fee $ 405 receipt number ADCDC–11243434) filed by SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Exhibit A – F, # 2 Civil Cover Sheet, # 3 Summons –Matthew M. Graves, # 4 Summons –U.S. Department of Defense, # 5 Summons –Merrick Garland, # 6 Summons –Lloyd J. Austin III, # 7 Summons –Laura D. Taylor–Kale)(Shanmugam, Kannon) (Entered: 10/18/2024) |
| 10/18/2024 | 2 | NOTICE OF RELATED CASE by SZ DJI TECHNOLOGY CO., LTD.. Case related to Case No. 24cv01381 and 24cv02357. (Shanmugam, Kannon) (Entered: 10/18/2024) |
| 10/18/2024 | 3 | |

| | | NOTICE of Appearance by Roberto J. Gonzalez on behalf of SZ DJI TECHNOLOGY CO., LTD. (Gonzalez, Roberto) (Entered: 10/18/2024) |
|---|---|---|
| 10/18/2024 | 4 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by SZ DJI TECHNOLOGY CO., LTD. (Shanmugam, Kannon) (Entered: 10/18/2024) |
| 10/18/2024 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Loretta E. Lynch, Filing fee $ 100, receipt number ADCDC–11243578. Fee Status: Fee Paid. by SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Shanmugam, Kannon) (Entered: 10/18/2024) |
| 10/18/2024 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Simona Shimeng Xu, Filing fee $ 100, receipt number ADCDC–11243592. Fee Status: Fee Paid. by SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Shanmugam, Kannon) (Entered: 10/18/2024) |
| 10/18/2024 | 7 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Samuel Rebo, Filing fee $ 100, receipt number ADCDC–11243596. Fee Status: Fee Paid. by SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Shanmugam, Kannon) (Entered: 10/18/2024) |
| 10/22/2024 | | Case Assigned to Judge Paul L. Friedman. (zsl) (Entered: 10/22/2024) |
| 10/22/2024 | 8 | SUMMONS (5) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 10/22/2024) |
| 10/22/2024 | 9 | ORDER granting 5 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions See Order for details. Signed by Judge Paul L. Friedman on October 22, 2024. (lcjd) (Entered: 10/22/2024) |
| 10/22/2024 | 10 | ORDER granting 7 Motion for Leave to Appear Pro Hac Vice. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions See Order for details. Signed by Judge Paul L. Friedman on October 22, 2024. (lcjd) (Entered: 10/22/2024) |
| 10/22/2024 | 11 | ORDER granting 6 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Paul L. Friedman on October 22, 2024. (lcjd) (Entered: 10/22/2024) |
| 11/27/2024 | 12 | NOTICE of Appearance by Derek Lawrence Shaffer on behalf of SZ DJI TECHNOLOGY CO., LTD. (Shaffer, Derek) (Entered: 11/27/2024) |
| 11/27/2024 | 13 | NOTICE of Appearance by Samuel Gates Williamson on behalf of SZ DJI TECHNOLOGY CO., LTD. (Williamson, Samuel) (Entered: 11/27/2024) |
| 11/27/2024 | 14 | NOTICE of Withdrawal of Counsel by SZ DJI TECHNOLOGY CO., LTD. (Shanmugam, Kannon) (Entered: 11/27/2024) |
| 11/27/2024 | 15 | NOTICE of Withdrawal of Counsel by SZ DJI TECHNOLOGY CO., LTD. (Lynch, Loretta) (Entered: 11/27/2024) |
| 11/27/2024 | 16 | NOTICE of Withdrawal of Counsel by SZ DJI TECHNOLOGY CO., LTD. (Gonzalez, Roberto) (Entered: 11/27/2024) |

| 11/27/2024 | 17 | NOTICE *of Withdrawal of Counsel* by SZ DJI TECHNOLOGY CO., LTD. (Xu, Shimeng) (Entered: 11/27/2024) |
|---|---|---|
| 11/27/2024 | 18 | NOTICE *of Withdrawal of Counsel* by SZ DJI TECHNOLOGY CO., LTD. (Rebo, Samuel) (Entered: 11/27/2024) |
| 12/02/2024 | | NOTICE of Provisional/Government Not Certified Status re 13 NOTICE of Appearance by Samuel Gates Williamson on behalf of SZ DJI TECHNOLOGY CO., LTD. (Williamson, Samuel).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 12/9/2024. (zapb) RESOLVED ..... 12/3/2024 (zapb). (Entered: 12/02/2024) |
| 12/20/2024 | 19 | NOTICE of Appearance by Daniel Riess on behalf of All Defendants (Riess, Daniel) (Entered: 12/20/2024) |
| 12/20/2024 | 20 | Unopposed MOTION for Extension of Time to File Answer by U.S. DEPARTMENT OF DEFENSE, LLOYD J. AUSTIN, III, LAURA D. TAYLOR–KALE. (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) (Entered: 12/20/2024) |
| 12/20/2024 | 21 | ORDER granting 20 Motion for Extension of Time to Answer. See Order for details. Signed by Judge Paul L. Friedman on December 20, 2024. (lcjd) (Entered: 12/20/2024) |
| 01/24/2025 | 22 | ANSWER to Complaint by U.S. DEPARTMENT OF DEFENSE, LLOYD J. AUSTIN, III, LAURA D. TAYLOR–KALE. (Attachments: # 1 Exhibit 1)(Riess, Daniel) (Entered: 01/24/2025) |
| 01/27/2025 | 23 | VACATED AS PER ORDER DATED 2/24/2025.......ORDER directing parties to meet and confer and file a joint status report on or before February 24, 2025. See Order for details. Signed by Judge Paul L. Friedman on January 27, 2025. (lcjd) (Entered: 01/27/2025) |
| 02/13/2025 | 24 | Joint MOTION for Entry of Proposed Case Management Briefing Schedule by U.S. DEPARTMENT OF DEFENSE, LLOYD J. AUSTIN, III, LAURA D. TAYLOR–KALE. (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) Modified on 2/14/2025 to correct relief (zjm). (Entered: 02/13/2025) |
| 02/24/2025 | 25 | ORDER granting 24 Motion for Briefing Schedule. See Order for details. Signed by Judge Paul L. Friedman on February 24, 2025. (lcjd) (Entered: 02/24/2025) |
| 02/24/2025 | 26 | NOTICE *of Filing the Certified List of the Contents of the Administrative Record* by U.S. DEPARTMENT OF DEFENSE, LLOYD J. AUSTIN, III, LAURA D. TAYLOR–KALE (Attachments: # 1 Certified List of the Contents of the Administrative Record, # 2 Certification of Administrative Record)(Riess, Daniel) (Entered: 02/24/2025) |
| 02/27/2025 | | |

| | | Set/Reset Deadlines: Amended Pleadings due by 3/3/2025. Cross Motions due by 4/4/2025. Response to Cross Motions due by 4/18/2025. Reply to Cross Motions due by 5/9/2025. Summary Judgment motions due by 3/14/2025. Response to Motion for Summary Judgment due by 4/4/2025. Reply to Motion for Summary Judgment due by 4/18/2025. (tj) (Entered: 02/27/2025) |
|---|---|---|
| 03/03/2025 | 27 | AMENDED COMPLAINT against All Defendants filed by SZ DJI TECHNOLOGY CO., LTD., SZ DJI BAIWANG TECHNOLOGY CO., LTD.,. (Attachments: # 1 Exhibit A–D)(Williamson, Samuel) (Entered: 03/03/2025) |
| 03/10/2025 | 28 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Samuel P. Nitze, Filing fee $ 100, receipt number ADCDC–11532110. Fee Status: Fee Paid. by SZ DJI TECHNOLOGY CO., LTD., SZ DJI BAIWANG TECHNOLOGY CO., LTD.,. (Williamson, Samuel) (Entered: 03/10/2025) |
| 03/11/2025 | | MINUTE ORDER granting 28 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Paul L. Friedman on March 11, 2025. (lcjd) Modified on 3/11/2025 (ztnr). (Entered: 03/11/2025) |
| 03/12/2025 | 29 | MOTION to Compel by SZ DJI TECHNOLOGY CO., LTD., SZ DJI BAIWANG TECHNOLOGY CO., LTD.,. (Attachments: # 1 Declaration of Samuel P. Nitze, # 2 Declaration of Samuel G. Williamson, # 3 Exhibit 1, # 4 Text of Proposed Order)(Williamson, Samuel) (Entered: 03/12/2025) |
| 03/13/2025 | 30 | NOTICE of Appearance by Samuel P. Nitze on behalf of All Plaintiffs (Nitze, Samuel) (Entered: 03/13/2025) |
| 03/14/2025 | | MINUTE ORDER: The defendants shall file their opposition to plaintiffs' 29 Motion to Compel on or before March 19, 2025. Plaintiffs may file a reply on or before March 21, 2025. Signed by Judge Paul L. Friedman on March 14, 2025. (lcjd) (Entered: 03/14/2025) |
| 03/14/2025 | 31 | MOTION for Summary Judgment by SZ DJI TECHNOLOGY CO., LTD., SZ DJI BAIWANG TECHNOLOGY CO., LTD.,. (Attachments: # 1 Text of Proposed Order)(Williamson, Samuel) (Entered: 03/14/2025) |
| 03/19/2025 | 32 | Memorandum in opposition to re 29 Motion to Compel, filed by U.S. DEPARTMENT OF DEFENSE, PETE HEGSETH, VIC S. RAMDASS. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Riess, Daniel) (Entered: 03/19/2025) |
| 03/21/2025 | 33 | REPLY re 29 MOTION to Compel *(Reply in Support of Plaintiff's Motion to Compel Defendants to Provide Access to "Classified" Information to Plaintiff's Counsel)* filed by SZ DJI TECHNOLOGY CO., LTD., SZ DJI BAIWANG TECHNOLOGY CO., LTD.,. (Williamson, Samuel) (Entered: 03/21/2025) |
| 03/24/2025 | | MINUTE ORDER: The government shall file a sur–reply to plaintiffs' 29 Motion to Compel on or before March 28, 2025. Signed by Judge Paul L. Friedman on March 24, 2025. (lcjd) (Entered: 03/24/2025) |
| 03/28/2025 | 34 | SURREPLY to re 29 MOTION to Compel filed by U.S. DEPARTMENT OF DEFENSE, PETER B. HEGSETH, VIC S. RAMDASS. (Riess, Daniel) (Entered: 03/28/2025) |
| 04/04/2025 | 35 | Cross MOTION for Summary Judgment by U.S. DEPARTMENT OF DEFENSE, PETER B. HEGSETH, VIC S. RAMDASS. (Attachments: # 1 Memorandum in |

| | | |
|---|---|---|
| | | Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Text of Proposed Order)(Riess, Daniel) (Entered: 04/04/2025) |
| 04/04/2025 | 36 | Memorandum in opposition to re 31 Motion for Summary Judgment filed by U.S. DEPARTMENT OF DEFENSE, PETER B. HEGSETH, VIC S. RAMDASS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(Riess, Daniel) Modified on 4/7/2025 to correct docket link(zjm). (Entered: 04/04/2025) |
| 04/04/2025 | 37 | NOTICE *of Lodging Classified Materials* by U.S. DEPARTMENT OF DEFENSE, PETER B. HEGSETH, VIC S. RAMDASS (Riess, Daniel) (Entered: 04/04/2025) |
| 04/08/2025 | 38 | ORDER directing parties to file a joint status report on or before April 14, 2025. See Order for details. Signed by Judge Paul L. Friedman on April 8, 2025. (lcjd) (Entered: 04/08/2025) |
| 04/09/2025 | | Set/Reset Deadlines: Status Report due by 4/14/2025 (tj) (Entered: 04/09/2025) |
| 04/14/2025 | 39 | Joint STATUS REPORT by PETER B. HEGSETH, VIC S. RAMDASS, U.S. DEPARTMENT OF DEFENSE. (Riess, Daniel) (Entered: 04/14/2025) |
| 04/15/2025 | 40 | ORDER scheduling oral argument on the parties' cross−motions for summary judgment [Dkt. Nos. 31, 35] for May 12, 2025 at 2:00 p.m. See Order for details. Signed by Judge Paul L. Friedman on April 15, 2025. (lcjd) (Entered: 04/15/2025) |
| 04/18/2025 | 41 | REPLY re 31 MOTION for Summary Judgment *(Reply in Support of Motion for Summary Judgment and Opposition to Defendants' Cross−Motion for Summary Judgment)* filed by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11)(Williamson, Samuel) (Entered: 04/18/2025) |
| 04/18/2025 | 42 | Memorandum in opposition to re 35 Motion for Summary Judgment filed by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD.. (See Docket Entry 41 to view document) (zjm) (Entered: 04/21/2025) |
| 04/23/2025 | | MINUTE ORDER: The oral argument scheduled for May 12, 2025 at 2:00 p.m., see Order [Dkt. No. 40], is hereby VACATED. The parties shall meet and confer and file a joint status report on or before April 30, 2025, advising the Court of the parties' availability during the weeks of June 16, 2025, and June 30, 2025, for oral argument on the cross−motions for summary judgment. Signed by Judge Paul L. Friedman on April 23, 2025. (lcjd) (Entered: 04/23/2025) |
| 04/30/2025 | 43 | Joint STATUS REPORT by PETER B. HEGSETH, VIC S. RAMDASS, U.S. DEPARTMENT OF DEFENSE. (Riess, Daniel) (Entered: 04/30/2025) |
| 05/01/2025 | | MINUTE ORDER: In light of the parties' 43 Joint Status Report, the parties are directed to file another joint status report on or before May 2, 2025. Signed by Judge Paul L. Friedman on May 1, 2025. (lcjd) (Entered: 05/01/2025) |
| 05/01/2025 | 44 | Joint STATUS REPORT by PETER B. HEGSETH, VIC S. RAMDASS, U.S. DEPARTMENT OF DEFENSE. (Riess, Daniel) (Entered: 05/01/2025) |
| 05/06/2025 | | MINUTE ORDER: In light of the parties' 44 Joint Status Report, the parties shall appear for an oral argument on the cross−motions for summary judgment on July 29, 2025 at 10:00 a.m. in Courtroom 29 in the William B. Bryant Annex to the E. Barrett Prettyman Courthouse at 333 Constitution Avenue N.W., Washington, D.C. 20001. |

| | | |
|---|---|---|
| | | The hearing will be open to the public and therefore there will be no discussion of the classified information implicated in this case. Furthermore, the Court will not hear argument related to the plaintiff's pending Motion to Compel [Dkt. No. 29], which the Court will defer ruling on until after the July 29, 2025 oral argument. The parties should be prepared to discuss the questions included in the Court's 40 April 15, 2025 Order. Signed by Judge Paul L. Friedman on May 6, 2025. (lcjd) (Entered: 05/06/2025) |
| 05/09/2025 | 45 | REPLY to opposition to motion re 35 Motion for Summary Judgment filed by PETER B. HEGSETH, VIC S. RAMDASS, U.S. DEPARTMENT OF DEFENSE. (Riess, Daniel) (Entered: 05/09/2025) |
| 05/13/2025 | | Set/Reset Hearings: Motion Hearing set for 7/29/2025 at 10:00 AM in Courtroom 29A– In Person before Judge Paul L. Friedman. (tj) (Entered: 05/13/2025) |
| 05/19/2025 | 46 | NOTICE of Appearance by Kristina Ann Wolfe on behalf of All Defendants (Wolfe, Kristina) (Entered: 05/19/2025) |
| 05/23/2025 | 47 | JOINT APPENDIX *Pursuant to Local Rule 7(n)* by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Joint Appendix Index, # 2 Administrative Record_Vol 1A, # 3 Administrative Record_Vol 1B, # 4 Administrative Record_Vol 1C, # 5 Administrative Record_Vol 2)(Williamson, Samuel) (Entered: 05/23/2025) |
| 07/24/2025 | 48 | ORDER directing parties to file a joint status report on or before July 28, 2025. See Order for details. Signed by Judge Paul L. Friedman on July 24, 2025. (lcjd) (Entered: 07/24/2025) |
| 07/25/2025 | 49 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alexander Van Dyke, Filing fee $ 100, receipt number ADCDC–11845645. Fee Status: Fee Paid. by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Williamson, Samuel) (Entered: 07/25/2025) |
| 07/28/2025 | | MINUTE ORDER granting 49 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Paul L. Friedman on July 28, 2025. (lcjd) (Entered: 07/28/2025) |
| 07/28/2025 | 50 | Joint STATUS REPORT by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD.. (Williamson, Samuel) (Entered: 07/28/2025) |
| 07/28/2025 | | MINUTE ORDER: At the request of plaintiffs' counsel, the Court hereby GRANTS the request made by phone to bring phones and computers into Courtroom 29 for the oral argument scheduled for July 29, 2025. Only counsel of record and accompanying associates are permitted to use phones and computers at counsel table. The parties are reminded that any use of electronics must comply with the general prohibition against recording, livestreaming, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions deemed necessary by the Court. Signed by Judge Paul L. Friedman on July 28, 2025. (ATM) (Entered: 07/28/2025) |
| 07/28/2025 | | MINUTE ORDER. The Court hereby adopts the schedule for the July 29, 2025 oral argument proposed in the parties' 50 Joint Status Report. Signed by Judge Paul L. Friedman on July 28, 2025. (ATM) (Entered: 07/28/2025) |
| 07/29/2025 | | |

|  |  | Minute Entry for proceedings held before Judge Paul L. Friedman: Motion Hearing held on 7/29/2025 re 35 Cross MOTION for Summary Judgment filed by U.S. DEPARTMENT OF DEFENSE, PETER B. HEGSETH, VIC S. RAMDASS, 31 MOTION for Summary Judgment filed by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD. Parties to confer and submit a joint draft protective order for the court's consideration by 8/6/2025. (Court Reporter: Elizabeth Davila) (tj) (Entered: 07/29/2025) |
|---|---|---|
| 07/30/2025 | 51 | TRANSCRIPT OF PROCEEDINGS, before Judge Paul L. Friedman, held on 7–29–2025; Page Numbers: 1 – 105. Date of Issuance: 7–30–2025. Court Reporter: Elizabeth Davila, Telephone number: 202–354–3242. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/20/2025. Redacted Transcript Deadline set for 8/30/2025. Release of Transcript Restriction set for 10/28/2025.(Davila, Elizabeth) (Entered: 07/30/2025) |
| 08/06/2025 | 52 | NOTICE *of Filing Draft Proposed Protective Order* by PETER B. HEGSETH, VIC S. RAMDASS, U.S. DEPARTMENT OF DEFENSE (Attachments: # 1 Exhibit Draft Proposed Protective Order, # 2 Exhibit Memorandum of Understanding)(Riess, Daniel) (Entered: 08/06/2025) |
| 08/13/2025 | 53 | ORDER clarifying status of Plaintiffs' 29 Motion to Compel. See Order for details. Signed by Judge Paul L. Friedman on August 13, 2025. (lcjd) (Entered: 08/13/2025) |
| 09/26/2025 | 54 | OPINION of the Court, DENYING 31 Plaintiffs' Motion for Summary Judgment and GRANTING 36 Defendants' Cross–Motion for Summary Judgment. See Opinion for details. Signed by Judge Paul L. Friedman on September 26, 2025. (ATM) (Entered: 09/26/2025) |
| 09/26/2025 | 55 | ORDER DENYING 31 Plaintiffs' Motion for Summary Judgment and GRANTING 36 Defendants' Cross–Motion for Summary Judgment. See Order for details. Signed by Judge Paul L. Friedman on September 26, 2025. (ATM) (Entered: 09/26/2025) |
| 10/13/2025 | 56 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 55 Order, 54 Memorandum & Opinion by SZ DJI BAIWANG TECHNOLOGY CO., LTD.,, SZ DJI TECHNOLOGY CO., LTD.. Filing fee $ 605, receipt number ADCDC–12018142. Fee Status: Fee Paid. Parties have been notified. (Williamson, Samuel) Modified on 10/14/2025 to add receipt number (mg). (Entered: 10/13/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SZ DJI TECHNOLOGY CO., LTD., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. DEPARTMENT OF DEFENSE, *et al.,*<br><br>　　　　　Defendants. | No. 1:24-cv-02970-PLF |

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiffs SZ DJI Technology Co., Ltd. and Shenzhen Dajiang Baiwang Technology Co., Ltd. appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's Order and Opinion entered in this action on September 26, 2025 (Dkt. Nos. 54, 55), denying Plaintiffs' Motion for Summary Judgment (Dkt. No. 31) and granting Defendants' Cross-Motion for Summary Judgment (Dkt. No. 36); and from any and all of the Court's rulings adverse to Plaintiffs incorporated in, antecedent to, or ancillary to the September 26, 2025 Order and Opinion.

Dated: October 13, 2025　　　　　　　Respectfully submitted,

1

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/   Samuel G. Williamson
Samuel G. Williamson (D.C. Bar No. 984748)
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
samwilliamson@quinnemanuel.com
Tel.:  (305) 402-4880
Fax:  (305) 901-2975

Derek L. Shaffer (D.C. Bar No. 478775)
1300 I Street, Suite 900
Washington, DC 20005
derekshaffer@quinnemanuel.com
Tel.:  (202) 538-8000
Fax:  (202) 538-8100

Samuel P. Nitze (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
                                    )
SZ DJI TECHNOLOGY CO., LTD. et al., )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )      Civil Action No. 24-2970 (PLF)
                                    )
U.S. DEPARTMENT OF DEFENSE et al.,  )
                                    )
            Defendants.             )
                                    )
```

## ORDER

For the reasons set forth in the Opinion issued this same day, it is hereby

ORDERED that Plaintiffs' Motion for Summary Judgment [Dkt. No. 31] is

DENIED; it is

FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment

[Dkt. No. 36] is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court shall remove this case from

the docket of the Court.

This is a final appealable order.  See FED. R. APP. P. 4(a)

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE:  9|26|25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
SZ DJI TECHNOLOGY CO., LTD. <u>et al.</u>,     )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )          Civil Action No. 24-2970 (PLF)
                                        )
U.S. DEPARTMENT OF DEFENSE <u>et al.</u>,      )
                                        )
            Defendants.                 )
_____)


<u>OPINION</u>

        This matter arises from a challenge by the plaintiff technology companies
(collectively, "DJI") to the decision by the Department of Defense ("DoD") to place DJI on a list
of "Chinese military compan[ies]" pursuant to Section 1260H of the William M. (Mac)
Thornberry National Defense Authorization Act for Fiscal Year 2021 (the "1260H List").  <u>See</u>
Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (2021).  According to DJI, the DoD
violated the Administrative Procedure Act ("APA") by placing it on the 1260H List without a
legitimate basis and further violated DJI's due process rights by failing to provide meaningful
process.

        The parties' cross-motions for summary judgment are now before the Court.  On
July 11, 2025, following completion of briefing on the cross-motions, the Court issued a decision
in a related case addressing several of the legal issues raised by the parties here.  <u>See</u> <u>Hesai Tech.
Co. v. U.S. Dep't of Def.</u>, Civil Action No. 24-1381 (PLF), 2025 WL 1911673 (D.D.C.
July 11, 2025).  Thereafter, on July 29, 2025, the Court held oral argument on the parties' cross-

motions for summary judgment in the instant case.  Upon careful consideration of the parties'
written submissions, their oral arguments, and the relevant authorities, the Court denies the
plaintiffs' Motion for Summary Judgment (Dkt. No. 31) and grants the defendants' cross-
motions for summary judgment (Dkt. No. 36).[1]

## I.  BACKGROUND

### A.  Statutory Background

The statute at issue in this case is Section 1260H of the William M. (Mac)
Thornberry National Defense Authorization Act for Fiscal Year 2021.  See Pub. L. No. 116-283,
§ 1260H, 134 Stat. 3388, 3965-66 (2021).  Section 1260H provides that the Department of
Defense ("DoD") may designate an entity as a "Chinese military company" and place it on the
"1260H List" if the DoD concludes that the entity meets certain statutory criteria.  The statute
defines "Chinese military company" as follows:

> (1) CHINESE MILITARY COMPANY. – The term "Chinese
> military company" –
>
>> (A) does not include natural persons; and
>>
>> (B) means an entity that is –
>>
>>> (i)
>>>> (I) directly or indirectly owned, controlled, or
>>>> beneficially owned by, or in an official or

---

[1]      The Court has reviewed the following documents in connection with the pending
motions:  Amended Complaint ("Am. Compl.") [Dkt. No. 27]; Plaintiffs' Motion for Summary
Judgment ("Pls.' Mem.") [Dkt. No. 31]; Memorandum in Support of Defendants' Cross-Motion
for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.'
Mem.") [Dkt. No. 36]; Plaintiffs' Reply in Support of Their Motion for Summary Judgment and
Opposition to Defendants' Cross-Motion for Summary Judgment ("Pls.' Reply") [Dkt. No. 41];
Reply Brief in Support of Defendants' Cross-Motion for Summary Judgment ("Defs.' Reply")
[Dkt. No. 45]; Joint Appendix Pursuant to Local Rule 7(n) ("AR") [Dkt. No. 47]; and the
transcript of oral argument in SZ DJI Technology Co., LTD. v. Dep't of Def., Civil Action No.
24-2970 (PLF) ("Tr.") [Dkt. No. 51].

> unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party; or
>
> (II) identified as a <u>military-civil fusion contributor</u> to the Chinese defense industrial base; and
>
> (ii) engaged in providing commercial services, manufacturing, producing, or exporting.

Section 1260H(d)(1) (emphasis added).[2]  The statute further defines the term "military-civil

fusion contributor" contained in Section 1260H(d)(1)(B)(II) as:

> (2) MILITARY-CIVIL FUSION CONTRIBUTOR – The term "military-civil fusion contributor" includes any of the following:
>
> (A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.
>
> (B) Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.
>
> (C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.
>
> (D) Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.
>
> (E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

---

[2]    The Court does not discuss Section 1260H(d)(1)(B)(ii) because neither party disputes that DJI "engage[s] in providing commercial services, manufacturing, producing, or exporting."

3

(F) Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

Section 1260H(d)(2).[3]

Once the DoD determines that an entity meets the definition of "Chinese military company," ("CMC") it places the company on the 1260H List and submits the list to Congress. The effect of being placed on the list is a developing area of policy. At a minimum, placement on the list "stigmatizes" the entity. See Pls.' Reply at 9. More concretely, placement on the list prevents an entity from accessing certain "covered support," which includes grants, contracts, loans and other programs, see 42 U.S.C. § 18912(a)(2), (3), and (c)(1), see also 42 U.S.C. § 19235, and prohibits DoD and the Department of Homeland Security from issuing contracts with the CMC. See Pls.' Mem. at 12 (citing the National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805(a)(1), 137 Stat. 136, 315 (2023) (covering the Department of Defense), and Pub. L. No. 118-47, § 536. 138 Stat. 460, 622 (2023) (covering the Department of Homeland Security)).

---

[3]    The parties disagree over whether the DoD should have applied the amended version of Section 1260H, which became effective on December 23, 2024. See Pls.' Mem. at 16-17; Defs.' Mem. at 8. As discussed more fully below, see infra Section III.A, the Court concludes that even if the DoD should have applied the amended version of Section 1260H, the failure to do so is harmless because the amendments to Section 1260H do not affect the outcome of this case. The Court refers to the pre-amended version of the statute throughout this Opinion.

4

Section 1260H(b)(3) requires that the DoD's 1260H List must be based on the "latest information available," thereby requiring ongoing revisions to the list as new information is gathered or received. See Section 1260H(b)(3) (providing that DoD "shall make additions or deletions to the most recent list . . . on an ongoing basis based on the latest information available").

### B.  Factual Background

#### 1.   SZ DJI Corporate Structure and Technology

Plaintiff SZ DJI Technology Co., Ltd. ("SZ DJI") is a privately owned manufacturer of consumer and commercial drones, also known as Unmanned Aerial Vehicles ("UAVs"), and is headquartered in Shenzhen, China. See Am. Compl. ¶¶ 15; see Pls.' Mem. at 1. SZ DJI has offices throughout Asia, Europe, and the United States, and its products are used by consumers worldwide. See Am. Compl. ¶ 15. Plaintiff SZ DJI Baiwang Technology Co. Ltd. (collectively, with SZ DJI, "DJI"), is a wholly owned subsidiary of SZ DJI and was incorporated in Shenzhen in February of 2015. See id. ¶ 16.

DJI's primary products are small, remote-controlled drones and UAVs made for consumer and commercial use. See Pls.' Mem. at 5. Commercial users in the United States include U.S. and state government agencies, police departments, fire departments, first responders, businesses, industrial sectors, and hobbyists, with DJI drones being available through common retailers. Id. at 5-7. DJI drones utilize various drone safety mechanisms such as geofencing – a technology that keeps drones away from restricted areas – and ADS-B receivers – a technology that allows DJI users to detect crewed aircraft and avoid potential collisions. Id. at 5. In addition, DJI drones can operate without a connection to the Internet or in

"local data mode," which allows for limited Internet usage while preventing data from being transmitted "to or from DJI's flight applications and servers." Id. According to DJI, it does not produce military drones and prohibits use of its drones for combat purposes. Id. at 5, 7.

    2.   The DoD's Designations of DJI as a Chinese Military Company

    The DoD first designated DJI as a "Chinese military company" in October 2022. See Pls.' Mem. at 8; Am. Compl. ¶ 2. While DJI was not afforded notice or an opportunity to be heard prior to its designation, DJI filed "a comprehensive delisting petition" in July 2023, "establishing that [the] DoD was required to remove DJI from the [Chinese military company] List pursuant to its statutory duty to 'make . . . deletions' from the List "based on the latest information available.'" Am. Compl. ¶ 3 (quoting Section 1260H(b)(3)); see AR at 1337-52 (delisting petition). In a further attempt to get information related to its designation, DJI filed a Freedom of Information Act ("FOIA") request on October 18, 2023. See AR at 1354.[4]

    In January 2024, the DoD redesignated DJI as a "Chinese military company." Am. Compl. ¶ 4; see AR at 27. As with the initial designation, the DoD failed to provide notice or an opportunity to be heard. Am. Compl. ¶ 4. DJI filed a second FOIA request in March 2024 seeking information related to its designation. See AR at 1354. In September 2024, DJI sent a letter to the DoD informing it that DJI intended to seek judicial relief. See AR at 1353-55. In response, the DoD sent DJI a "courtesy copy" of its internal report – dated November 2023 – describing the basis by which the DoD concluded that DJI satisfied the definition of "Chinese military company" contained in Section 1260H. See AR at 1356-60. That same month, DJI discussed its listing with the DoD and sent a letter informing the DoD that the November 2023

---

    [4]    DJI indicates that to date, it has not been provided with any response to its FOIA request. See Pls.' Mem. at 9.

report contained numerous factual errors and failed to establish that DJI met the Section 1260H

statutory criteria.  See AR at 1367-71 see also Am. Compl. ¶ 6.  The DoD "declined to remove"

DJI from the Section 1260H List even after "DJI informed DoD that the 2023 Report contained

multiple factual errors and other deficiencies."  See AR at 1372-73; see also Am. Compl. ¶ 7.

   DJI filed this action on October 18, 2024, challenging the DoD's January 2024

designation decision.  See Complaint [Dkt. No. 1].  Shortly thereafter, the DoD informed DJI

that it was evaluating whether DJI would be redesignated as a CMC in 2025.  Pls.' Mem. at 10.

While the published list did not give any rationale for designating DJI, see id., the DoD provided

a report or decision – dated December 6, 2024 – explaining its rationale for redesignating DJI as

a "Chinese military company."  See AR at 21-42 ("Decision").[5]  On January 7, 2025, the DoD

published its updated Section 1260H List in which it redesignated DJI as a "Chinese military

company."  See AR at 14-20.

   In the Decision, the DoD explained that it found that DJI met the definitions of

"Chinese military company" contained in Section 1260H(d)(1)(B)(i)(I) and

Section 1260H(d)(1)(B)(i)(II).  See Decision at 7.  As for Section 1260H(d)(1)(B)(i)(I) – which

defines "Chinese military company" as any entity "directly or indirectly owned, controlled, or

beneficially owned by . . . the People's Liberation Army or any other organization subordinate to

the Central Military Commission of the Chinese Communist Party" – the DoD concluded that

DJI satisfied the statutory criteria because "it is a State-Owned Entity (SOE) directly owned by

the State-owned Assets Supervision and Administrative Commission (SASAC) of the State

Council."  Decision at 7; see also Section 1260(H)(d)(1)B)(i)(I).  More specifically, the DoD

---

   [5]  References to the Decision are to the page numbers of the Decision, not to the
page numbers of the Administrative Record.

found that DJI had "received an unknown amount of funds from three PRC state-owned entities owned and actively managed by SASAC:  China Chengtong Holdings Group, Guangdong Hengjian Investment Holdings, and SDIC Unity Capital."  Decision at 8.

As for Section 1260H(d)(1)(B)(i)(II) – which defines "Chinese military company" as any entity that is "identified as a military-civil fusion contributor to the Chinese defense industrial base" – the DoD found that DJI met three of the definitions of "military-civil fusion contributor" contained in Section 1260H(d)(2).  See Decision at 9-13.  More specifically, the DoD found that DJI satisfied (1) Section 1260H(d)(2)(A) – DJI "knowingly receiv[es] assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus" – (2) Section 1260H(d)(2)(B) – DJI is "affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects" – and (3) Section 1260H(d)(2)(E) – DJI "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone."  See Decision at 9-13.  As for Section 1260H(d)(2)'s requirement that DJI contribute "to the Chinese defense industrial base," the portion of the Decision related to this finding is completely redacted.  See Decision at 7-8.

In light of the DoD's redesignation, the parties agreed to an expedited schedule for the disposition of this case.  See Order [Dkt. No. 25].  The DoD provided DJI with the administrative record on February 24, 2025, and DJI filed an amended complaint on March 3, 2025.  See Am. Compl.  In its amended complaint, DJI states four counts arising under the Administrative Procedure Act ("APA"):  (1) that defendants' designation of DJI was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' and is 'in

excess of statutory jurisdiction, authority, or limitations' under the APA," id. ¶¶ 147-160; (2) that defendants' designation was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 'without observance of procedure as required by law,' and 'unsupported by substantial evidence," id. ¶¶ 161-65; (3) that defendants' refusal to remove DJI from the 1260H List is an agency action "unlawfully withheld or unreasonably delayed," id. ¶¶ 166-173; and (4) that defendants' designation "violates DJI's due process rights and is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and 'contrary to constitutional right.'" Id. ¶¶ 174-181.

## II.  LEGAL STANDARD

"[W]hen a party seeks review of agency action under the [Administrative Procedure Act ("APA")] . . . the district judge sits as an appellate tribunal." Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  The general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to a review of agency action. Summary judgment nonetheless "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)); accord Mashpee Wampanoag Tribe v. Bernhardt, 466 F. Supp. 3d 199, 213 (D.D.C. 2020); Cottage Health Sys. v. Sebelius, 631 F. Supp. 2d 80, 89-90 (D.D.C. 2009).  In other words, "[t]he entire

case on review is a question of law." Marshall Cnty. Health Care Auth. v. Shalala, 988

F.2d 1221, 1226 (D.C. Cir. 1993).

Under the APA, a reviewing court shall "hold unlawful and set aside agency

action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The arbitrary and capricious

standard is deferential; it requires that agency action simply be 'reasonable and reasonably

explained.'" Cmtys. for a Better Env't v. EPA, 748 F.3d 333, 335 (D.C. Cir. 2014) (quoting

Nat'l Tel. Coop. Ass'n v. FCC, 563 F.3d 536, 540 (D.C. Cir. 2009)); see also Kennecott Greens

Creek Min. Co. v. Mine Safety and Health Admin., 476 F.3d 946, 954 (D.C. Cir. 2007) ("[The]

standard of review under the arbitrary and capricious test is only reasonableness, not

perfection.").  "[A] court is not to substitute its judgment for that of the agency" if the agency

"examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including

a rational connection between the facts found and the choice made." Airmotive Eng'g Corp. v.

Fed. Aviation Admin., 882 F.3d 1157, 1159 (D.C. Cir. 2018) (quoting Motor Vehicle Mfrs.

Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (internal quotation

marks omitted).

"The Court's review, however, must be 'searching and careful.'" Colo. River

Cutthroat Trout v. Salazar, 898 F. Supp. 2d 191, 199 (D.D.C. 2012) (quoting Nat'l Env't. Dev.

Ass'n's Clean Air Project v. EPA, 686 F.3d 803, 810 (D.C. Cir. 2012)).  "An agency decision is

arbitrary and capricious if it 'relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem, offered an explanation for its

decision that runs counter to the evidence before the agency, or is so implausible that it could not

be ascribed to a difference in view or the product of agency expertise.'" Cablevision Sys. Corp.

v. FCC, 649 F.3d 695, 714 (D.C. Cir. 2011) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State

Farm Mut. Auto. Ins. Co., 463 U.S. at 43); accord Agape Church, Inc. v. FCC, 738 F.3d 397, 410

(D.C. Cir. 2013). Just as the Court may not "substitute [its] judgment for that of the agency" to

set aside an agency action, Rural Cellular Ass'n v. FCC, 588 F.3d 1095, 1105 (D.C. Cir. 2009), it

also may not "affirm an agency decision on a ground other than that relied upon by the agency."

Manin v. Nat'l Transp. Safety Bd., 627 F.3d 1239, 1243 (D.C. Cir. 2011).

   When applied to agency factfinding, arbitrariness review is equivalent to

"substantial evidence" review. Crooks v. Mabus, 845 F.3d 412, 423 (D.C. Cir. 2016); see also

Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 745

F.2d 677, 683-84 (D.C. Cir. 1984) (describing the "substantial evidence" standard as a subset of

the "arbitrary and capricious" standard). "Under the substantial-evidence standard, a court looks

to an existing administrative record and asks whether it contains sufficient evidence to support

the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (cleaned up).

While the court "must carefully scrutinize the entire record," Butler v. Barnhart, 353

F.3d 992, 999 (D.C. Cir. 2004), all that is required is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103

(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In reviewing an

agency's evidence, the court "must also be mindful of the harmless-error rule." Saunders v.

Kijakazi, 6 F.4th 1, 4 (D.C. Cir. 2021). Even if the court perceives error, it must affirm the

agency's decision unless the error is prejudicial. Id.

### III. PROCEDURAL ERRORS

   DJI argues that the DoD committed two procedural errors that justify remand:

first, the DoD applied the incorrect legal standard by designating DJI under the pre-amended

version of the statute; and second, DJI failed to account for contradictory evidence in the record. <u>See</u> Pls.' Reply at 5-9. The Court concludes that DJI has either failed to show that the DoD actually committed a procedural error or that any such error materially affected the DoD's decision.

### A. Incorrect Legal Standard

The core of the parties' dispute centers on whether the DoD's "final agency action" that DJI now challenges occurred before or after Section 1260H was amended on December 23, 2024. <u>See</u> Pub. L. 118-159, §1346, 138 Stat. 2123-26 (2024). According to DJI, the "final agency action" was performed on January 7, 2025 – the date the DoD published the Section 1260H List to the Federal Register – meaning that the DoD was required to use the amended Section 1260H statute. <u>See</u> Pls.' Mem. at 16-17. According to the DoD, the "final agency action" was performed on December 16, 2024 – the date that its Decision was sent to Congress – and therefore it was required to apply the statute as it existed before the amendments. <u>See</u> Defs.' Mem. at 8.

The DoD argues that because it finished making this determination on December 16, 2024, the pre-amended version of the statute governs. DJI on the other hand argues that it is challenging the DoD's action taken pursuant to Section 1260H(b), which contains the requirement that the DoD must publish the Section 1260H List. See Pls.' Mem. at 2-3 , 15. Section 1260H(b) requires both (1) that the DoD "annually . . . shall submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified" as a "Chinese military company" and (2) "[c]oncurrent with the submission of each list[,] . . . publish the unclassified portion of such list in the Federal Register." Section 1260H(b)(1)-(2). DJI contends that because the statute requires the DoD to "concurrent[ly]"

12

publish the Section 1260H List, the DoD's action was not completed until publication in the

Federal Register on January 7, 2025 – after the statute had been amended.

Any error by the DoD in applying the pre-amended version of the statute to DJI's

designation is harmless because it does not affect the outcome of this case. The statutory

provisions at issue here are materially the same for all intents and purposes regardless of which

version of the statute is applied. Because DJI has not established that it has suffered any

prejudice as a result of the DoD's possible error in applying the pre-amended version of the

statute, DJI fails to show that the error warrants remand. See PDK Lab'ys Inc. v. DEA, 362

F.3d 786, 799 (D.C. Cir. 2004) ("If the agency's mistake did not affect the outcome, if it did not

prejudice the [plaintiff], it would be senseless to vacate and remand for reconsideration."); see

also Jicarilla Apache Nation v. U.S. Dep't of Interior, 613 F.3d 1112, 1121 (D.C. Cir. 2010)

("The burden to demonstrate prejudicial error is on the party challenging agency action.").

### B.  Contradictory Evidence

DJI argues that the DoD failed to consider all the evidence before it and did not

adequately "grapple with contrary evidence" in the record. See Pls.' Mem. at 17-18 (quoting

Fred Meyer Stores, Inc. v. NLRB, 865 F.3d 630, 638 (D.C. Cir. 2017)). The primary evidence

that DJI contends the DoD ignored was DJI's July 2023 "delisting petition." See Pls.' Mem.

at 17-18; see also AR at 1337-52   More specifically, DJI makes two arguments:  first, that the

DoD erred by failing to "mention the extensive evidence that DJI's delisting petition set out

showing that it did not belong on the CMC list," see Pls.' Mem. at 17-18; and second, that the

DoD did not consider evidence of DJI's "complete ownership structure" showing that it was "not

owned by the Chinese Communist Party or the SASAC," or evidence of "DJI's commitment to

preventing its drones from being used in combat and its suspension of all sales to business

partners in Russia and Ukraine to ensure its drones were not used in the conflict there." See id.
at 18 (citing AR at 1337-41).

           DJI's arguments fail. This evidence is only relevant to the DoD's finding that DJI
meets the definition of "Chinese military company" in Section 1260H(d)(1)(B)(i)(I). But DJI
has not pointed to a direct contradiction between the evidence it submitted and the DoD's
findings in support of the July 2023 delisting petition. As the DoD points out, "[t]he fact that
DoD did not specifically refer to [DJI's July 2023 delisting petition] in the DJI Report" is not
evidence that the DoD failed to consider the information. Defs.' Mem. at 9. While DJI argues
that the DoD "ignored" evidence related to "DJI's commitment to preventing its drones from
being used in combat," Pls.' Mem. at 18, the DoD asserts that it "specifically evaluated the
contrary evidence" that DJI states was ignored. Defs.' Reply at 6. DJI does not identify any
findings by the DoD that contradict evidence in the record. Nor could it. The DoD found that
DJI's drones have been used by certain militaries – which DJI appears to acknowledge, see Pls.'
Reply at 19-20; Tr. at 43-44 – not that DJI has actively marketed or designed its drones for
military use. It simply appears that the DoD reached a different conclusion during its review of
the evidence in the administrative record, which is well within its discretion. See Hesai Tech.
Co., Ltd v. Dep't of Defense, 2025 WL 1911673, at *17.

## IV. STATUTORY DESIGNATION

           The DoD found that DJI was a "Chinese military company" under both
Section 1260H(d)(1)(B)(i)(I) – the provision related to Chinese ownership and control over DJI –
and Section 1260H(d)(1)(B)(i)(II) – the provision at issue in Hesai related to "civil-military
fusion contributors." See Decision at 7. The Court begins by discussing whether the DoD

properly designated DJI under Section 1260H(d)(1)(B)(i)(II) – the "military-civil fusion contributor" definition – before turning to the designation under Section 1260H(d)(1)(B)(i)(I).

### A. *Section 1260H(d)(1)(B)(i)(II)*

1. "Military-civil fusion contributor"

In the portion of its decision relating to Section 1260H(d)(1)(B)(i)(II), the DoD found that DJI meets three of the definitions of "military-civil fusion contributor:"

> (A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.
>
> (B) Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.
>
> [. . .]
>
> (E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

Section 1260H(d)(2). <u>See</u> Decision at 8-13. The Court addresses each of these grounds separately. But as the Court held in <u>Hesai</u>, if DJI satisfies any one of these three definitions, it is a military-civil fusion contributor. <u>See</u> <u>Hesai Tech. Co., Ltd v. Dep't of Defense</u>, 2025 WL 1911673, at *6; <u>see</u> <u>also</u> Tr. at 22, 50, 61.

### a. <u>Section 1260H(d)(2)(A)</u>

Section 1260H(d)(2)(A), provides that an entity is a "military-civil fusion contributor" if it is

> knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology

15

efforts initiated under the Chinese military industrial planning apparatus.

Section 1260H(d)(2)(A).[6]

In finding that DJI satisfied Section 1260H(d)(2)(A), the DoD "identified two grounds for its determination, one of which is discussed in the redacted portion of the DoD Decision because it is classified. See Defs.' Mem. at 25 (noting that the classified portion of the DoD Decision is discussed in the classified annex to the defendants' memorandum). The ground discussed in the unredacted portions of defendants' memorandum is that DJI has been recognized as a "National Enterprise Technology Center" ("NETC") by China's "National Development and Reform Commission" ("NDRC"). See id. The DoD argues that DJI satisfies Section 1260H(d)(2)(A) because (1) the NDRC is part of the "the Chinese military industrial

---

[6]    The amended version of the statute, Section 1260H(g)(3)(A), provides that an entity is a "military-civil fusion contributor" if it is

> knowingly receiving assistance from the Government of China or the Chinese Communist Party through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives, including selection or designation as a 'Single Champion', 'Little Giant', or any other successor selection or designation as an enterprise associated with industrial planning or military-civil fusion efforts.

Section 1260H(g)(3)(A) (underline added to show similarities with pre-amended version of the statute). If anything, the amendments to Section 1260H are less favorable to DJI because they appear to broaden the definition of "military-civil fusion contributor." Regardless, a comparison between the pre-amended and amended versions of Section 1260H reflect that if DJI meets the definition of "military-civil fusion contributor" in Section 1260H(d)(2)(A) – the pre-amended version of the statute – it necessarily will meet the definition provided in Section 1260H(g)(3)(A) –the amended version of the statute.

16

planning apparatus," and (2) NDRC provides assistance to DJI through the NETC program. See id. at 25-27.

According to the DoD Decision, the NDRC "is an organ of the military industrial planning apparatus as it is subordinate to the State Council and serves as the economic planning organization responsible for providing planning, strategy, and resources to support the National Defense Mobilization Commission's (NDMC) objectives." See Decision at 9. The DoD principally relies on two pieces of evidence. First, the DoD cites to an article from a website called "ChinaScope," which strongly supports the DoD's contention. See Decision at 20 n.59; AR at 612 ("ChinaScope Article"). The article states that NDRC "manag[es] the country's defense mobilization efforts," "works with relevant authorities to formulate strategies to promote the coordinated development of economic and national defense construction[,] and undertakes specific work related to the National Defense Mobilization Commission." ChinaScope Article. Second, the DoD cites to a document titled "China's National Defense Mobilization," which was created in connection with testimony given by Devin Thorne – "Principal Threat Intelligence Analyst for China Geopolitics Recorded Futures" – in June 2024 before the "U.S.-China Economic and Security Review Commission" on the topic of "China's Preparation for Competition and Conflict." See Decision at 20 n.60; AR 613-668 ("Thorne Testimony"). The Thorne Testimony provides background on the PRC's "national defense mobilization system," explaining that it "is a complex bureaucracy of military and civilian government coordinating bodies under [Chinese Communist Party] leadership." Thorne Testimony at 1, AR 614.

In addition to the evidence expressly cited in the Decision, other evidence in the record supports the finding that NDRC is closely related with the PRC's military industrial planning and military-civil fusion efforts. For example, the DoD's 2023 Annual Report to

Congress on the "Military and Security Developments involving the People's Republic of China"

explains the significance of NDRC to the PRC's military planning and military-civil fusion,

stating in relevant part:

> The overall management and implementation of the [military-civil fusion] Development Strategy involves the most powerful organs in the party-state:  the Politburo, the State Council (notably the National Development and Reform Commission), and the CMC.  In addition to signifying its importance, the CCP Central Committee's elevation of the MCF Development Strategy to a national-level strategy also was intended to overcome obstacles to implementation across the party-state.

AR at 716; see AR 669-880 ("2023 Annual Report").  Another article – from the China

Aerospace Studies Institute – explains that "NDRC's Economic and Defense Coordinated

Development Department . . . works closely with the [Central Military Commission] Strategic

Planning Office's Military-Civil Fusion Bureau to study and formulate plans and policies to

coordinate military and economic activities."  AR at 383.  DJI does not significantly dispute

NDRC's connection to the Chinese military planning apparatus and instead focuses on its

argument that the purported "assistance" it receives is insufficient to satisfy

Section 1260H(d)(2)(A).  See Pls.' Reply at 20-23.

Turning to the purported "assistance" that DJI has received from NDRC, the DoD

points to the NDRC's recent recognition of DJI as a "National Enterprise Technology Center"

("NETC").  See Defs.' Mem. at 25.  The DoD relies on an article from the "Shenzhen

Entrepreneurship and Innovation Financial Service Platform," which explains that DJI was

"successfully recognized as a national enterprise technology center" in December 2020.  See AR

at 604; see also AR at 603-611 ("DJI NETC Designation Article").  The article explains that this

"scarce" "qualification" "is a symbol of industry leadership and strength," and NETC recipients

> enjoy[] many policy benefits, including free cash subsidies of up
> to 5 million to 15 million yuan from various provinces and cities,
> special financial support for the National Technology Center from
> the Ministry of Science and Technology, the National Development
> and Reform Commission, and state owned capital Industry
> upgrading funds, as well as a large number of tax benefits . . . .

DJI NETC Designation Article at 2, AR at 604.[7]  Outside of the benefits DJI receives from its

designation as a NETC, the article outlines numerous other awards and projects DJI and its

affiliates have received, stating that DJI had "successfully applied for hundreds of policy

subsidies" in 2020.  See id. at 1, AR at 603.

      The issue of whether the DoD's finding is supported by substantial evidence

ultimately comes down to two issues of statutory interpretation:  first, whether

Section 1260H(d)(2)(A) requires a direct connection between the assistance DJI receives and

Chinese "military industrial planning;" and second, whether Section 1260H(d)(2)(A) requires the

DoD to find that DJI is currently receiving assistance.  The Court addresses each in turn.

i.    Statutory Interpretation – "initiated under the Chinese military industrial planning apparatus"

      The first issue is whether Section 1260H(d)(2)(A) requires the DoD to find that

the particular assistance DJI receives through the NETC designation "is part of [the] military

industrial planning apparatus."  See Pls.' Mem. at 30.  DJI argues that the statute requires the

DoD to show a connection between the assistance DJI receives and China's "military industrial

planning."  See Pls.' Reply at 20 (arguing that the DoD has failed to show that "NETC

recognition has any relation to the Chinese military and even admits that recognition as a

[NETC] is merely a 'symbol of industry leadership and strength.'") (quoting AR 604).  DJI

interprets Section 1260H(d)(2)(A) as requiring the DoD to show that an entity receives

---

[7]    5 million to 15 million yuan is approximately $700,000 to $2,000,000.

19

assistance <u>for purposes</u> of "Chinese military industrial planning" – that is, that the assistance must have some "relation to the Chinese military." <u>See</u> Pls.' Reply at 20. The DoD disagrees. According to the DoD, it must show only that the assistance – the NETC recognition – "has been provided in accordance with the totality of means by which China carries out its goals, policies, and procedures for the use of manufactured products that help support its military establishment." <u>See</u> Defs.' Mem. at 25. In other words, the fact that NETC recognition is orchestrated by the NDRC – an institution that has a close connection to Chinese military planning – is sufficient for purposes of Section 1260H(d)(2)(A).

The DoD has the better interpretation of the statute. DJI's argument that the DoD must show that "the NETC program . . . is part of [the] 'military industrial planning apparatus,'" Pls.' Mem. at 30, is at odds with the text of Section 1260H(d)(2)(A). The better and more textual reading of Section 1260H(d)(2)(A) is that DJI must receive assistance from the Chinese government "through science and technology efforts" that are "initiated under the Chinese military industrial planning apparatus." The statutory text does not require a connection between the assistance and the "Chinese military industrial planning apparatus." Rather, the statute seems to require only that the assistance is given "through science and technology efforts" – not military efforts – that are "initiated under the Chinese military industrial planning apparatus."

When the statute is so interpreted, the NETC designation as a science and technology effort appears to fit the bill: (1) the designation entitles DJI to awards and subsides; (2) it is given to entities doing technological and scientific research; and (3) the award is "initiated" by the NDRC, an entity that is clearly part of "the Chinese military industrial planning apparatus." The NRDC "initiated" the awards of technological and scientific assistance to DJI's

20

NETC.  See AR at 604, 605.  The Court need not consider the redacted, presumably classified,

material in order to reach this conclusion.

　　　　　Looking outside the statutory text, DJI argues that the non-military scope of the

NETC program – which includes "industry leaders that make everything from cars to

dishwashers to sausages" – should mean that evidence of DJI's involvement in the program is

insufficient on its own for purposes of satisfying Section 1260H(d)(2)(A).  See Pls.' Reply at 20;

see also Pls.' Mem. at 30.  In support, DJI points to Judge Contreras's reasoning in Xiaomi Corp.

v. Dep't of Def., Civil Action No. 21-0280 (RC), 2021 WL 950144 at *8 (D.D.C.

Mar. 12, 2021).  See Pls.' Mem. at 30-31.  Judge Contreras concluded that an award that was

given to "[o]ver 500 entrepreneurs . . . includ[ing] . . . the leaders of a Chinese powdered milk

and infant formula company, the maker of a well-known chili sauce brand, and a barley wine

producer," was insufficient to support the DoD's conclusion that the plaintiff was a "Communist

Chinese military company."  See Xiaomi Corp. v. Dep't of Def., 2021 WL 950144, at *8.

　　　　　There are at least two reasons to reject this argument.  First, Xiaomi is irrelevant

because Judge Contreras was interpreting a different statute. [8]  Applying that statute, Judge

---------

[8]　　　　The statute at issue in Xiaomi defined "Communist Chinese military company" as
any "person that:"

> (i) is owned or controlled by, or affiliated with, the People's
> Liberation Army or a ministry of the government of the People's
> Republic of China or that is owned or controlled by an entity
> affiliated with the defense industrial base of the People's Republic
> of China; and
>
> (ii) is engaged in providing commercial services, manufacturing,
> producing, or exporting.

Section 1237(b)(4)(B) of the National Defense Authorization Act for Fiscal Year 1999,
Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998) (as amended).

Contreras concluded that the particular award in that case was insufficient to support the DoD's finding that the plaintiff was "effectively controlled" by "the People's Liberation Army or a ministry of the government of the People's Republic of China or that is owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China." Xiaomi Corp. v. Dep't of Def., 2021 WL 950144, at *1, 6-7. In the instant case, the statutory provision is different and far more modest. As discussed above, the statute does not require a connection between the exact assistance provided and the military, other than to require that the assistance is "initiated under the Chinese military industrial planning apparatus." See Section 1260H(d)(2)(A).

Second and more importantly, the concern underlying DJI's argument – that non-military companies can be designated as "Chinese military companies" – is resolved by the requirement contained in Section 1260H(d)(1)(B)(i)(II), which states that the DoD must find that an entity contributes "to the Chinese defense industrial base." In other words, while non-military entities may satisfy Section 1260H(d)(2)(A) if they receive certain assistance "initiated under the Chinese military industrial planning apparatus," that alone does not satisfy the statutory requirements. Those entities also must be shown to contribute "to the Chinese defense industrial base" under Section 1260H(d)(1)(B)(i)(II) in order to be placed on the Section 1260H List.[9]

---

[9]    The amendments to Section 1260H – the version of the statute that DJI insists governs the instant case – further negate DJI's argument that the assistance itself must be linked to "the Chinese military industrial planning apparatus." Specifically, Congress amended the provision at issue here – the meaning of the term "Chinese military-civil fusion contributor – to include explicit references to certain designations such the "Little Giant" designation. See Section 1260H(g)(3)(A) (amended version of the statute). While the "Little Giant" program is not at issue in this case, this designation is given to thousands of companies, "including countless companies that plainly have no military connection (such as those selling clothing, watches, cotton textiles, and animal husbandry services." See Hesai Tech. Co., Ltd v. Dep't of Defense, Civil Action No. 24-1381, Plaintiffs' Motion for Summary Judgment (D.D.C. Dec. 9, 2024)

22

ii.  Statutory Interpretation – "receiving assistance"

DJI argues that the DoD's finding that it meets the definition of "military-civil fusion contributor" in Section 1260H(d)(2)(A) is not supported by substantial evidence because the DoD has not shown that DJI is <u>currently</u> receiving assistance in connection with its NETC designation.  <u>See</u> Pls.' Reply at 21.  DJI points out that the DoD's evidence only suggests that DJI "<u>may</u> receive several benefits such as tax breaks and subsidies," that DJI is <u>not</u> <u>currently</u> <u>receiving</u> such benefits, and that the statute is written in the present tense – "receiving assistance."  <u>Id</u>. (emphasis in original).  The DoD's primary response to this argument – that the phrase "receiving assistance" merely requires the DoD to show that DJI recently "received" assistance rather than require a showing that DJI is presently receiving assistance – is not persuasive.  <u>See</u> Defs.' Reply at 19.  The stronger argument that the DoD makes is that record evidence shows that DJI has applied for and received numerous projects and subsidies unrelated to its designation as a NETC.  <u>See</u> AR at 604-05 (listing projects for which DJI has received assistance from various Chinese governmental organizations).  In light of DJI's substantial history of receiving these other forms of assistance from various Chinese governmental entities, it is reasonable to infer that DJI is also receiving assistance through the NETC program.  And given the deferential substantial evidence standard, the Court finds that the evidence showing DJI's track record of applying for and receiving assistance is sufficient to support the DoD's conclusion.

---

[Dkt. No. 42] at 34.  In other words, Congress's amendments to the statute reveal that the awards themselves do not necessarily need to have a "relation to the Chinese military."  <u>See</u> Pls.' Reply at 20.

iii.  Similarly Situated Entities

As its final argument with respect to Section 1260H(d)(2)(A), DJI argues that the DoD's decision was arbitrary and capricious because the DoD failed to include on the Section 1260H List other entities that are "similarly situated" to DJI.  See Pls.' Mem. at 22-23, 26, 32, 34-35; Pls.' Reply at 3-5, 16-17, 23, 25.  DJI's clearest articulation of the argument is in its reply brief, where it lists several companies – Nokia Bell, Whirlpool, Volkswagen, and Nissan – that have similar attributes to DJI, including, most relevantly here, having been recognized as NETCs.  See Pls.' Reply at 3-4.

DJI argues that Section 1260H requires the DoD "to list all" Chinese military companies, "not just the companies [the] DoD disfavors."  See Pls.' Reply at 4 (emphasis in original).  This proposition is critical to DJI's argument that the DoD has treated DJI differently from "similarly situated" entities because it turns the DoD's inaction – the fact that DoD did not list a particular company with similar attributes to DJI on the Section 1260H List – into DoD action – the DoD considered these entities but nonetheless chose not to place them on the Section 1260H List.  According to DJI, the DoD's designation was arbitrary and capricious because it chose to list DJI and chose not to list similarly situated companies.  DJI's argument rests on what appears to be an incorrect reading of the statute.  The statute gives discretion to the Secretary of Defense to determine which entities to place on the Section 1260H List.  In relevant part, Section 1260H states:  "The Secretary of Defense shall identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company."  Section 1260H(a).  Under the statute, the Secretary has broad discretion to decide to place X on the list, while also deciding not to place Y on the list.

24

The fact that Section 1260H only requires the Secretary to "identify each entity the Secretary determines" makes this case distinguishable from the line of cases relied on by DJI. Critically, the cases cited by DJI involved instances where an agency acted differently when dealing with similarly situated parties, not – as here – where the agency only took action as to a single party. For example, in <u>Baltimore Gas & Elec. Co. v. FERC</u>, the issue was whether a decision by the Federal Energy Regulatory Commission ("FERC") was arbitrary and capricious where the petitioner argued that four "similarly situated" utilities had "received more favorable treatment . . . ." <u>See</u> <u>Baltimore Gas & Elec. Co. v. FERC</u>, 954 F.3d 279, 284 (D.C. Cir. 2020). More specifically, the petitioner in that case identified "four prior orders" of FERC reflecting such differential treatment and offered no reasoned explanation for its decision. <u>See</u> <u>id</u>. Similarly, in <u>Petroleum Commc'ns, Inc. v. FCC</u>, the petitioner had identified "prior" agency rulemaking that appeared inconsistent with the rule challenged by the petitioner and did not explain why. <u>See</u> <u>Petroleum Commc'ns, Inc. v. FCC</u>, 22 F.3d 1164, 1172 (D.C. Cir. 1994) (agency had previously "recognized the significant differences between land-based and Gulf-based licensees prior to the instant rulemaking when it permitted Gulf-based licensees to define their service areas by reference to the entire Gulf of Mexico").

In the instant case, however, DJI has not identified "prior" acts by the DoD that reflect inconsistent and differential treatment. Rather, DJI has merely shown that the DoD acted with respect to DJI and not with respect to other "similarly situated" entities. Nor have they actually shown that the companies they reference, <u>see</u> Pls.' Reply at 3-4, 16-17, are in fact similarly situated. In sum, because the DoD is not required to list every entity that meets the definition of "Chinese military company" in Section 1260H, DJI has not made "a significant showing that analogous cases have been decided differently." <u>See</u> <u>LeMoyne-Owen College v.</u>

25

NLRB, 357 F.3d 55, 60-61 (D.C. Cir. 2004) (Roberts, J.); see also Muwekma Ohlone Tribe v. Salazar, 708 F.3d 209, 215-17 (D.C. Cir. 2013) (considering whether the agency's decision was "arbitrary and capricious because it failed to follow Interior precedent established in other recognition cases").

In light of the fact that this case does not involve differential treatment of similarly situated parties but rather the DoD's decision to "partially act" by listing DJI, the case law cited by the DoD is persuasive.  See Defs.' Reply at 15-16.  The cases on which the DoD appropriately relies stand for the proposition that an agency need not "make progress on every front before it can make progress on any front."  United States v. Edge Broad. Co., 509 U.S. 418, 434 (1993); see Mobil Oil Exploration & Producing Se. Inc. v. United Distribution Cos., 498 U.S. 211, 231 (1991) ("[A]n agency need not solve every problem before it in the same proceeding."); Grunewald v. Jarvis, 776 F.3d 893, 906 (D.C. Cir. 2015) (same); see also TC Ravenswood, LLC v. FERC, 331 F. App'x 8, 9 (D.C. Cir. 2009) ("An incremental approach to a problem is certainly within the scope of the Commission's discretion.").  As Judge McFadden explained:

> [T]he Applicants' position boils down to a requirement that agencies regulate exhaustively if they regulate at all.  But "an agency need not solve every problem before it in the same proceeding.  This applies even where the initial solution to one problem has adverse consequences for another area that the agency was addressing." Mobil Oil Expl. & Prod'ing Se. Inc. v. United Distro. Cos., 498 U.S. 211, 231 (1991); see also United States v. Edge Broad. Co., 509 U.S. 418, 434 (1993) (holding that an agency need not "progress on every front before it can make progress on any front").  "Agencies often must contend with matters of degree. Regulations . . . are not arbitrary just because they fail to regulate everything that could be thought to pose any sort of problem." Pers. Watercraft Indus. Ass'n v. Dep't of Comm., 48 F.3d 540, 544 (D.C. Cir. 1995).

Liu v. Mayorkas, 588 F. Supp. 3d 43, 57 (D.D.C. 2022).

In sum, because the DoD has discretion to list only the entities it identifies as "Chinese military companies," and because DJI has not identified any prior DoD actions that reflect differential treatment between itself and a "similarly situated" entity, the Court cannot conclude that the DoD's finding is arbitrary and capricious.  Furthermore, because DJI satisfies the requirement of Section 1260H(d)(2)(A), the Court need not consider the other relevant subsections of the statute – Section 1260H(d)(2)(B) and Section 1260H(d)(2)(E).  It nevertheless does so in order to complete its analysis of the statutory provisions at issue.  The Court concludes that the DoD has failed to demonstrate that DJI satisfies the requirements of either.

### b.  <u>Section 1260H(d)(2)(B)</u>

Section 1260H(d)(2)(B) provides that an entity is a "military-civil fusion contributor" if it is

> affiliated with the Chinese Ministry of Industry and Information Technology [("MIIT")], including research partnerships and projects.

The parties' interpretations of the term "affiliated with" in Section 1260H(d)(2)(B) are not materially different.  According to the DoD, "affiliated with" means "associations 'on the basis of a common purpose or of shared characteristics.'"  <u>See</u> Defs.' Mem at 29 (quoting Affiliated, Oxford English Dictionary, https://www.oed.com/dictionary/affiliated_adj?tab=meaning_and_use#9323083 (affiliated (adj.)).  According to DJI, "[t]he term 'affiliated with' means in close formal or informal association."  <u>See</u> Pls.' Mem. at 33 (citing Section 1260H(g)(1) in the amended version of the statute).[10]  The parties agree that the term "affiliated with" should be interpreted broadly and

---

[10]    DJI's definition comes directly from the amended version of Section 1260H.  <u>See</u> Section 1260H(g)(1).

requires some "close" relationship. See Defs.' Mem. at 29 n.20; see also Pls.' Reply at 23 ("The parties apparently agree that, both as a matter of plain meaning and as confirmed in the definitions set forth in the amended version of Section 1260H, to be 'affiliated with' an entity is to have a 'close' association with that entity.").

      The DoD concluded that DJI was "affiliated with" Chinese MIIT because (1) DJI employs Zhang Yuxin – "an Associate Professor at the Jilin University [ ] State Key Laboratory of Automotive Simulation" – who "served as a subproject leader" on a Chinese MIIT project in 2020, and (2) "DJI collaborated with MIIT to draft a national standard related to UAS safety and served as a 'main drafting unit' for the standard on 'Safety Requirements for Civilian Unmanned Aircraft Systems.'" See Decision at 10-11.

      Turning first to DJI's employment of Zhang Yuxin and DJI's asserted affiliation with MIIT on this basis, the DoD's evidence is sparse. Zhang Yuxin is employed at DJI as the "functional safety department lead," and is also "an associate professor at China's Jilin University State Key Laboratory of Automotive Simulation." Defs.' Mem. at 30; see AR at 934. The DoD provides evidence that Zhang Yuxin "served as a Subproject Leader for an MIIT research project entitled '2020 Industrial Technology Foundation Public Service Platform Project, Department of In-vehicle Intelligent Computing System simulation test verification service platform.'" Defs.' Mem. at 30; see AR at 1096.[11] Zhang Yuxin's involvement in the project ceased in October 2022. Decision at 11; see Pls.' Reply at 24. Outside of this single project, the DoD highlights that Zhang Yuxin's laboratory at Jilin University is "oversee[n]" by

––––––––––––––––––––

[11]    The evidence cited in the record is untranslated from Mandarin. See AR at 1094-98; see also Defs.' Mem. at 30 n.21. The DoD appended a translated version of this evidence to its memorandum of law. See Ex. 2 to Defs.' Mem. [Dkt. No. 36-2].

"China's Ministry of Science and Technology," which – while "organized directly by China's State Council," see Defs.' Mem. at 31 – does not appear to have any relationship with MIIT. This evidence is of a little probative value regarding DJI's affiliation with MIIT. At best, the evidence suggests that an employee of DJI had an affiliation with MIIT at some point in the recent past, but it fails to show that (1) there is currently an affiliation between Zhang Yuxin and MIIT or that (2) any affiliation with MIIT on the part of Zhang Yuxin is indicative of an affiliation between DJI and MIIT. This evidence is not sufficient.

The DoD's second category of evidence – that DJI collaborated with MIIT to draft a national standard and served as the "main drafting unit" for another standard – is more substantial. DJI was designated by MIIT as a "Main drafting unit[]" for the "National Standard" related to "Safety Requirements for Civilian Unmanned Aircraft Systems." AR at 905. The "main drafting unit of a national standard refers to the unit that leads the drafting of a national standard," and such entities "can generally receive standard reward subsidies of 200,000 to 500,000 yuan from the local government." See AR at 898.[12] Evidence in the record suggests that "China has taken a 'strategic approach toward technical standards,' and 'views standardization as a way to strengthen its research and development . . . ecosystem by elevating whole-sector capacities." Defs.' Mem. at 29 (quoting AR at 911-12) (internal citation omitted); see AR at 922 (explaining that "national standards" are important to "help the domestic UAV industry occupy the commanding heights of technology").

The problem for the DoD is that this single instance of cooperation with MIIT is insufficient to show the type of "close relationship" needed to conclude that DJI is "affiliated

---

[12]    200,000 to 500,000 yuan is approximately 27,000 to 70,000 USD.

with" MIIT.  At best, the DoD has only proffered evidence that DJI cooperated with MIIT on

national standards "as recently as 2023."  See Defs.' Reply at 21; Defs.' Mem. at 32.  Although

the evidence may be somewhat probative of an affiliation that DJI had with MIIT in the recent

past, it does not suggest that DJI continues to be "affiliated with" MIIT.  See Pls.' Reply

at 24-25.  Even given the deference owed to the DoD, this single instance of past cooperation

between DJI and MIIT is insufficient to support the finding that the two entities are "in close

formal or informal association."  See Pls.' Mem. at 33.  In sum, DoD's finding of affiliation

under Section 1260H(d)(2)(B) is not supported by substantial evidence. [13]

### c.  Section 1260H(d)(2)(E)

Section 1260H(d)(2)(E) provides that an entity is a "military-civil fusion

contributor" if it is

> residing in or affiliated with a military-civil fusion enterprise zone
> or receiving assistance from the Government of China through such
> enterprise zone.

### i. Military-Civil Fusion Enterprise Zone

The DoD's primary basis for concluding that DJI satisfied

Section 1260H(d)(2)(E) was as follows:

> In 2019, DJI announced plans to build its Innovation Center and
> Global Technical Support Center in the Xi'an Economic and
> Technological Development Zone within years.  The new DJI

---

[13]    As a final matter, DJI argues that none of the DoD's evidence purportedly
reflecting an "affiliation with" MIIT shows that DJI's affiliation was military in nature.  See Pls.'
Reply at 33 ("[T]he 'Safety Requirements for Civilian Unmanned Aircraft Systems' cannot
establish the necessary affiliation between DJI and the MIIT . . . . [because] that standard is a
safety standard for civilian, not military, drones.").  This argument is unavailing because there is
nothing in the text of Section 1260H(d)(2)(B) that suggests that the DoD is required to show that
any affiliation with MIIT has a military valence.

headquarters, called the DJI Sky City Innovation Hub, has been
open since September 2022.

Decision at 12.[14]

There are two problems with this analysis. First, the DoD implies that the DJI

Sky City Innovation Hub is located within the Xi'an Economic and Technological Development

Zone. But the DJI Sky City Innovation Hub is actually located in Shenzhen, "a different city in

China more than 1,000 miles from Xi'an." See Pls.' Mem. at 37; see also AR at 1123

(explaining that DJI's headquarters is in Shenzhen). Second, in support of its assertion that the

Xi'an Economic and Technological Development Zone is a "military-civil fusion enterprise

zone" within the meaning of Section 1260H(d)(2)(E), the DoD appears to conflate what appear

to be two different zones: (1) the Xi'an Economic and Technological Development Zone and

(2) the Xi'an High-Tech Industrial Development Zone. See Decision at 13 ("[T]he Xi'an High-

Tech Industrial Development Zone (also known as the Xi'an Economic and Technological

Development Zone) [is] a "military-civil fusion enterprise zone . . . ."). In its briefing here, the

DoD essentially abandons arguments related to the "Xi'an Economic and Technological

Development Zone" and focuses instead only on the "Xi'an High-Tech Industrial Development

Zone." See Defs.' Mem. at 34 (arguing that "regardless of whether the Xi'an Economic and

Technological Development Zone is also known as or is otherwise related to the Xi'an High

_____

[14]    The Decision also references a report issued by the Qujing City People's
Government, which listed DJI as a "target compan[y]" for its plan "to establish military-civilian
integration modern equipment manufacturing and dual-use equipment manufacturing in Qujing."
See Decision at 13. The DoD does not highlight any evidence in the record stating that a
military-civil fusion enterprise zone was built in Qujing, or that DJI built or agreed to build a
facility in Qujing. The DoD's primary response is that DJI "provide[s] no support for [its]
statement that [it] did not accept the offer by the Qujing City People's Government to participate
in its municipal development plan to promote military-civilian integration . . . ." Defs.' Mem.
at 34. This argument is unavailing because it is the DoD's burden to support its findings with
substantial evidence, not DJI's burden to refute the DoD's unsupported findings.

Tech Industrial Development Zone, the record evidence discussed above shows that the Xi'an

High-Tech Industrial Development Zone is itself a military-civil fusion enterprise zone").

Looking to the evidence in the record, the DoD argues that DJI satisfies

Section 1260H(d)(2)(E) because it is "affiliated with" the Xi'an High Tech Industrial

Development Zone.  See Defs.' Mem. at 33-34; Defs.' Reply at 22.  The Court agrees with DoD

that there is substantial evidence in the record to support the DoD's finding that the Xi'an High

Tech Industrial Development Zone is a "military-civil fusion enterprise zone."  The DoD

provides a Report of the U.S. Senate Committee on Banking, Housing, and Urban Affairs

wherein the "Xi'an High-Tech Industrial Development" zone is identified as a "military-civil

fusion enterprise zone[]."  See AR at 1210; see also id. (defining "military-civil fusion enterprise

zones" as "industrial zones dedicated to incubation of, as well as information exchange among,

[military-civil fusion] entities").  The particular portion of the Senate Report – containing the

prepared statements of a principal at Horizon Advisory, see AR at 1207 – explains that the Xi'an

High-Tech Industrial Development Zone "takes, as its 'main direction,' 'absorbing high-quality

resources form [sic] the whole society to participate in natural defense construction, guiding

civilian technology to expand into the military field, and promoting network information.'"  See

AR at 1210 n.23.  The record also contains a document from the NDRC explaining that in 2016:

> Xi'an High-tech Industrial Development Zone Management
> Committee . . . signed the 'Memorandum of Understanding on
> Jointly Promoting the Standardization Strategy of Civil-Military
> Integration Industry' to jointly explore the establishment of a
> standardized regulatory system, management system, technical
> standard system, work system and standardized service guarantee
> system for military-civilian integration, realize the optimal
> allocation and effective utilization of standard information
> resources, and promote the two-way transfer of military and civilian
> technology . . . .

Id. at 1155.

On the basis of the foregoing, the Court finds that there is substantial evidence to support the DoD finding that Xi'an High Tech Industrial Development Zone is a "military-civil fusion enterprise zone." As discussed below, however, it concludes that the DoD has failed to show that DJI "resid[es] in or [is] affiliated with" the zone.

### ii. Resides in or is Affiliated With

First, the DoD asserts that substantial evidence in the record demonstrates that DJI is "affiliated with" the Xi'an High Tech Industrial Development Zone. It points to several pieces of evidence showing that in 2019, DJI announced that it "intended to build a thousand-person innovation research and development center as well as a global technical support center in the Xi'an High-Tech Industrial Development Zone." Defs.' Reply at 22; see AR 1104, 1108-09, 1118. DJI argues that a "six-year old plan, with no evidence or claim that it was ever implemented, shows no present or even recent connection between DJI and the Xi'an High-Tech Industrial Development Zone." Pls.' Reply at 26. The Court agrees with DJI. "[R]easonable minds would be hard-pressed to accept as adequate the Department of Defense's . . . determination" that DJI is "affiliated with" the Xi'an High-Tech Industrial Development Zone based only on an announcement from over half a decade ago that DJI intended to build a facility in the zone. See Xiaomi Corp. v. Dep't of Def., Civil Action No. 21-0280 (RC), 2021 WL 950144, at *7 (D.D.C. Mar. 12, 2021); see also Biestek v. Berryhill, 587 U.S. at 103.[15]

_____

[15]    The DoD's primary response is unavailing. The DoD essentially argues that "[t]he most recent information available may not be information that is current as of the date of DoD's decision, given the difficulty of obtaining information about evolving threats to national security." Defs.' Mem. at 22; see id. ("The statute directs DoD to base its decision on 'the most recent information available.'") (quoting Section 1260H(a)). The Court has little doubt that obtaining information on national security threats is challenging. But the Court cannot disregard the obligations imposed on the DoD by the APA – particularly the requirement that the DoD's

Second, the DoD briefly suggests that DJI's "concession" – made in the context of the instant motion – that it "has a connection with the High-Tech Industrial Development Zone" by stating that it has an office in a "subzone[]" of the Xi'an High-Tech Industrial Development Zone provides substantial evidence to support its finding.  See Defs.' Reply at 23; see also Pls.' Reply at 28 ("Given its sheer size, the Xi'an High Tech Zone necessarily divides into subzones or clusters by industry, and DJI's subzone is not related to military-civil fusion in any respect.").  But the DoD does not point to any evidence in the administrative record referencing DJI's facility in the Xi'an High-Tech Industrial Development Zone.  The Court therefore cannot conclude that the "existing administrative record . . . contains sufficient evidence to support the agency's factual determinations."  See Biestek v. Berryhill, 587 U.S. at 102 (cleaned up).  Indeed, the situation presented here – where the DoD relies on a concession outside of the administrative record and not referenced anywhere in its initial decision – runs headlong into concerns about an agency attempting to justify its decision after the fact.  See Department of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 20 (2020) ("[T]he post hoc rationalizations of the agency . . . cannot serve as a sufficient predicate for agency action.").

In sum, while the DoD has shown that the Xi'an High-Tech Industrial Development Zone is a "military-civil fusion enterprise zone," the DoD has failed to provide

---

decision be supported by substantial evidence – simply because the particular decision implicates national security.  The DoD's burden of presenting recent evidence reflecting that DJI "resid[es] in" or is "affiliated with" the Xi'an High-Tech Industrial Development Zone – by nature of being in the process of building a facility – is hardly insurmountable, especially where, as DJI points out, many American and international companies currently reside in the zone.  Indeed, DJI presented the DoD with strong evidence suggesting that it "resid[es] in" the Xi'an High-Tech Industrial Development Zone.  In its complaint – which was filed before the DoD's redesignation decision – DJI admits that it "currently rents office space in the Xi'an High Tech Zone." Complaint [Dkt. No. 1] ¶ 122.

substantial evidence showing that DJI "reside[s] in" or is otherwise "affiliated with" this

enterprise zone, as required under Section 1260H(d)(2)(E).

> 2.  Contributions "to the Chinese defense industrial base"

Having determined that DJI is a "military-civil fusion contributor," the next issue

is whether DJI contributes "to the Chinese defense industrial base."  See

Section 1260H(d)(1)(B)(i)(II).  The portion of the DoD's Decision that relates to DJI's

contributions "to the Chinese defense industrial base" is redacted.  See Decision at 7-8; see also

Defs.' Mem. at 24.  But the Court concludes that it does not need to look at the classified

portions of the record because "[b]y its nature, DJI's drone and camera technology has

substantial dual-use applications in military and civilian settings."  See Defs.' Mem. at 24.  As

the Court explained in Hesai, "an entity contributes 'to the Chinese defense industrial base' if it

produces a product or technology that has substantial military application or benefit."  Hesai

Tech. Co., Ltd v. Dep't of Defense, 2025 WL 1911673, at *13.

There is ample evidence in the record demonstrating that DJI's drone technology

has "substantial military application or benefit."  For example, record evidence demonstrates that

DJI's drones have been "modified to carry" "small explosive[s]" by certain militaries – like

Russia and Ukraine – to be used in armed conflict.  See AR at 263-64.  Indeed, DJI

acknowledges that its technology can and is used in military conflict but asserts that its policies

prohibit such use.  See Pls.' Reply at 18.  Whether or not DJI's policies prohibit military use is

irrelevant.  That does not change the fact that DJI's technology has both substantial theoretical

and actual military application.

DJI's arguments are very similar to the arguments discussed and rejected by the

Court in Hesai.  First, DJI argues that the DoD's interpretation of Section 1260H(d)(1)(B)(i)(II) –

that entities that produce a "dual use" product necessarily contribute "to the Chinese defense industrial base," see Defs.' Mem. at 24 – is "limitless."  See Pls.' Reply at 18-19.  The Court agreed in Hesai and determined that showing that a product "can have both commercial and military application" is insufficient.  See Hesai Tech. Co., Ltd v. Dep't of Defense, 2025 WL 1911673, at *11.  Rather, the DoD must show that the entity's product has "substantial military application."  See id. at *12.  As discussed above, DJI's drone technology clearly has substantial military application.  Second, DJI argues that because it does not sell its products to militaries or design its products for military use, it cannot be found to contribute "to the Chinese defense industrial base."  See Pls.' Reply at 17-20.  This argument essentially is the same as Hesai's argument that the DoD must show that DJI actually "supplies" its product to militaries in order to contribute "to the Chinese defense industrial base."  As the Court explained in Hesai:

> The Court cannot agree, however, with Hesai's argument that this definition means that only entities that "suppl[y] the Chinese government or military 'with materials, products, and services for defense purposes'" are contributors "to the Chinese defense industrial base."  The DoD definition itself puts emphasis on "private sector" entities "with capabilities to perform" certain activities rather than focusing solely on those entities that have some contractual relationship to supply a government with military products or services. Furthermore, requiring such a direct relationship – such as being a military supplier – appears inconsistent with concerns surrounding "military-civil fusion" identified by the DoD.

Hesai Tech. Co., Ltd v. U.S. Dep't of Defense, 2025 WL 1911673, at *11 (internal citations omitted).

In sum, as in Hesai, the Court must conclude here "that the DoD's finding that [DJI] contributes 'to the Chinese defense industrial base' is supported by substantial evidence because the evidence in the record viewed in light of the nature of [drone] technology could lead

'a reasonable mind [to] accept as adequate to support a conclusion.'"  See Hesai Tech. Co., Ltd v. Dep't of Defense, 2025 WL 1911673, at *17 (quoting Biestek v. Berryhill, 587 U.S. at 103).

### B.  Section 1260H(d)(1)(B)(i)(I)

Section 1260H(d)(1)(B)(i)(I) provides that an entity is a "Chinese military company" if it is

> directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

The DoD concluded that DJI met this statutory provision based on evidence demonstrating that "three entities owned and actively managed by the State-Owned Assets Supervision and Administration Commission ("SASAC") have invested in DJI:  China Chengtong Holdings Group and its wholly owned subsidiary Chengtong Fund Management Co., Ltd. (collectively 'Chengtong'), Guangdong Hengjian Investment Holdings ('Guangdong'), and SDIC United Capital ('SDIC')."  Defs.' Mem. at 17; see Decision at 8-9.[16]  The DoD does not offer evidence reflecting the size of these investments or the ownership stake such investments represents.  See Defs.' Mem. at 18.

The parties' arguments boil down to three primary issues:  first, whether any of the above listed entities are actually investors in DJI; second, whether there is sufficient evidence in the record that demonstrates that these entities are investors in DJI; and third, whether – assuming the entities are investors in DJI – such investment is sufficient to conclude that DJI is

---

[16]    It is worth noting that DJI appears to agree that if the DoD shows that DJI is owned or controlled by any of the three entities in question – Chengtong, Guangdong, or SDIC – the DoD has shown that DJI meets the definition of "Chinese military company" contained in Section 1260H(d)(1)(B)(i)(I).  See Pls.' Mem. at 23-24; see also Defs.' Mem. at 18.

"directly or indirectly owned, controlled, or beneficially owned by" SASAC.  For the reasons

that follow, the Court concludes that the DoD has failed to proffer substantial evidence to

support its finding that DJI meets the definition of "Chinese military company" contained in

Section 1260H(d)(1)(B)(i)(I).

### 1.  Consideration of Evidence Outside the Record

As to the first issue, even if one looks at extra-record evidence, it appears that

none of the three entities identified by the DoD – Chengtong, Guangdong, and SDIC – actually

have any ownership interest in DJI.  See Pls.' Reply at 14; see also Declaration of Jessica Wei

[Dkt. No. 41-10].  More specifically, the evidence – a sworn declaration from DJI's head of

"Corporate Development and Investor Relationship Department" – suggests that Chengtong

"ceased to be an investor in DJI as of June 2023," that Guangdong was never an investor in DJI,

and that SDIC "was a passive investor in a pooled investment vehicle managed by an U.S.

company . . . ."  See Declaration of Jessica Wei [Dkt. No. 41-10] ¶¶ 5-7.  The DoD's only

response to this evidence is that it is improper to consider because it is outside of the record.  See

Defs.' Mem. at 13.  The DoD is correct that the Court may not consider evidence outside of the

record.  With that said, if the Court were to conclude that the DoD's

Section 1260H(d)(1)(B)(i)(I) was the only support for its Decision, DJI would have a strong

argument – for purposes of its due process claim – that it has suffered prejudice by nature of not

having an opportunity to contest the DoD's factual matter related to DJI's ownership.  Cf. Hesai

Tech. Co., Ltd v. Dep't of Defense, 2025 WL 1911673, at *17 (declining to reach due process

claim because plaintiff failed to demonstrate prejudice); see also Pls.' Reply at 14 n.2.

2.  Whether Substantial Evidence in the Record Supports the Finding that Chengtong, Guangdong, or SIDC Have Some Ownership Interest in DJI

As to the second issue – whether substantial evidence supports the finding that Chengtong, Guangdong, or SIDC have some ownership interest in DJI – the evidence is sparse. As an initial matter, the DoD appears to concede that only one entity – Chengtong – remains listed as an investor in DJI as of October 2024.  See Defs.' Reply at 13.  While the DoD's arguments appear to suggest that the other two entities' previous investments – that is, Guangdong and SIDC – could serve as support for its finding under Section 1260H(d)(1)(B)(i)(I) that DJI is "directly or indirectly owned, controlled, or beneficially owned by" SASAC, see id., the argument must be rejected:  Section 1260H(d)(1)(B)(i)(I) clearly requires that the DoD find that an entity is "owned, controlled, or beneficially owned," not that it was at some point "owned, controlled, or beneficially owned."  See Section 1260H(d)(1)(B)(i)(I).

The issue therefore becomes whether substantial evidence supports the DoD's finding that Chengtong currently has an ownership stake in DJI.  To that end, the DoD cited several pieces of evidence in the record and referenced in the DoD Decision demonstrating that Chengtong has invested in DJI:  (1) a February 2022 article from a publication called "Drone XL;" see AR at 572-88 ("Drone XL Article"); (2) three reports from "S&P Capital IQ" on DJI's and Chengtong's ownership, see AR at 589-90 ("S&P DJI Report"); AR at 591-93 ("S&P Chengtong Fund Report"); AR at 594-96 ("S&P Chengtong Holdings Report"); and (3) a February 2022 article from the Washington Post.  See AR at 275-79 ("WaPo Article"); see also Decision at 8-9.  The evidence shows that in 2018, Chengtong invested an unknown amount in DJI.  See Drone XL Article at 4; see also WaPo Article at 3 (noting Chengtong's investment in DJI).  Furthermore, the evidence suggests that Chengtong continued to hold a stake in DJI until

39

at least sometime in 2024.  See S&P DJI Report; S&P Chengtong Fund Report.[17]  In addition to

discussing Chengtong's ownership stake in DJI, the WaPo Article and Drone XL Article

highlight the difficulty for the United States government to determine the ownership of DJI.  See

WaPo Article at 2 (noting the "broader challenges that investors and governments' face in

uncovering links between private Chinese tech firms and Beijing").

       DJI's primary argument in opposition to this evidence is that it had refuted

allegations pertaining to Chengtong's ownership stake prior to the DoD's redesignation decision.

Specifically, it had informed the DoD in July 2023 and later in September 2024 that Chengtong

had ceased to have any ownership interest in DJI.  See Pls.' Mem. at 23; AR at 1339

(July 27, 2023 letter), id. at 1368 (September 30, 2024 letter).[18]  The DoD makes two arguments

in response.  First, the DoD explains that it provided little weight to these statements because

they were not "sworn statements."  See Defs.' Mem. at 18-19 (citing Kirkland v. McAleenan,

Civil Action No. 13-0194, 2019 WL 7067046, at *18-20 (D.D.C. Dec. 23, 2019) (holding that

unsworn statements are "beyond the scope of the 'kinds of evidentiary materials' contemplated

---

[17]     The S&P reports do not identify the date on which the reports were run.  The
Decision appears to cite to two version of the S&P report for DJI's ownership – one report was
accessed on May 6, 2024, and one was accessed on October 25, 2024.  See Decision at 8 n.49
n.53.  It is unclear whether the May 2024 or October 2024 report is contained in the record.
While unclear, it appears that the S&P DJI Report as of October 2024 was based on the DoD's
argument.  See Defs.' Mem. at 18 (arguing that record evidence shows that DJI's September 30,
2024 statement that Chengtong was not currently an investor in DJI was contradicted by record
evidence post-dating that statement).

[18]     DJI also briefly argues that the S&P report is not reliable because it provides a
disclaimer that the statements contained in the report are "mere 'statements of opinion . . . and
not statements of fact . . . .'"  See Pls.' Reply at 13-14.  This boilerplate disclaimer standing
alone cannot provide a basis for the Court to determine that the DoD improperly assigned too
much weight to this piece of evidence.  See Sault Ste. Marie Tribe of Chippewa Indians v.
Haaland, 659 F. Supp. 3d 33, 51 (D.D.C. 2023) ("[A]n agency decision to find a piece of
evidence credible or not carries much weight.") (subsequent procedural history omitted).

by Rule 56" because they lack any "indicia of reliability"). Second, the DoD argues that it was entitled to reach its conclusion that Chengtong had an ownership stake given the S&P reports reflecting such stake. See Defs.' Mem. at 18-19; but see supra note 17 (explaining that it is unclear if the S&P reports post-date DJI's statements related to Chengtong's ownership stake).

The Court concludes that there is sufficient evidence in the record to support the DoD's finding that Chengtong has some unspecified ownership stake in DJI. Given the recency of the S&P reports in the record, May and October 2024, see supra note 17, the DoD was entitled to weigh that evidence against DJI's unsworn assertions that Chengtong did not have an ownership stake in DJI and reach the conclusion that it did. See Archer W. Contractors, LLC v. United States Dep't of Transportation, 45 F.4th 1, 6 (D.C. Cir. 2022) ("An agency's conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.") (citation and internal quotation marks omitted); Krzywicki v. Del Toro, 755 F. Supp. 3d 1, 15 (D.D.C. 2024) ("it is well-established that hearsay can constitute substantial evidence in an administrative proceeding"). Moreover, even if the evidence in the record pre-dates DJI's assertions related to Chengtong's ownership interest, the DoD's evidence also demonstrates that determining the ownership of DJI is particularly difficult given that it is privately owned. See WaPo Article at 2 (noting the "broader challenges that investors and governments face in uncovering links between private Chinese tech firms and Beijing"); see also Defs.' Mem. at 14 (discussing difficulty of investigating DJI's ownership structure). In sum, there is evidence in the record to support the DoD's conclusion that Chengtong has some ownership interest in DJI. But the statute requires more.

3.   Whether Substantial Evidence Supports the Finding that DJI is "directly or indirectly owned, controlled, or beneficially owned by" SASAC through Chengtong

The issue is whether evidence of Chengtong's investment in DJI is sufficient to support the conclusion that DJI is "directly or indirectly owned, controlled, or beneficially owned by" by SASAC.  As a reminder, the parties appear to agree that SASAC's control over Chengtong means that if Chengtong "own[s]" or "control[s]" DJI, then SASAC "indirectly" "own[s]" or "control[s]" DJI for purposes of Section 1260H(d)(1)(B)(i)(I).  The core of the parties' dispute centers of the meaning of the term "owned" in Section 1260H(d)(1)(B)(i)(I).  The DoD argues that the word "owned" should be given its ordinary meaning and thus be interpreted as "to 'have or hold as property:  possess."  See Defs.' Mem. at 19 (Own, MERRIAM-WEBSTER COLLEGIATE DICTIONARY, https://www.merriam-webster.com/dictionary/own); see also Own, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To rightfully have or possess as property; to have legal title to.").  According to DJI, the word "owned" "means 'to have or hold as property' or 'to have power or mastery over.'"  See Pls.' Mem. at 24 (quoting Own, MERRIAMWEBSTER.COM, https://www.merriam-webster.com/dictionary/own (last visited July 15, 2025). [19]

The Court concludes that the meaning of the word "owned" in Section 1260H(d)(1)(B)(i)(I) is actually rather straightforward.  The term "owned" requires the DoD to show that Chengtong has some level of control, not just mere possession of DJI equity.  The terms of Section 1260H(d)(1)(B)(i)(I) are undoubtedly focused on control or effective

---

[19]     DJI argues that the Court should apply the same "50 Percent Rule" – that is, fifty percent of DJI must be "directly or indirectly owned, controlled, or beneficially owned by" SASAC – that "the U.S. Department of Treasury's OFAC has consistently applied" in the context of its sanctions list.  See Pls.' Mem. at 24.  It is not necessary to reach this argument because the DoD has failed to present substantial evidence supporting its Section 1260H(d)(1)(B)(i)(I) finding.

control of an entity by the Chinese government entity.  Indeed, the words of the provision make

that clear:  "directly or indirectly owned, controlled, or beneficially owned."

Section 1260H(d)(1)(B)(i)(I).  Judge Contreras in both <u>Luokung</u> and <u>Xiaomi</u> considered a

similarly worded provision in a related statute – Section 1237 defining "Communist Chinese

military companies" – and determined that the provision was focused on "control."  <u>See</u> <u>Xiaomi</u>

<u>Corp. v. Dep't of Def.</u>, Civil Action No. 21-0280 (RC), 2021 WL 950144, at *5-6 (D.D.C.

Mar. 12, 2021); <u>Luokung Tech. Corp. v. Dep't of Def.</u>, 538 F. Supp. 3d 174, 184 (D.D.C. 2021).

This Court agrees.

        In light of this conclusion that Section 1260H(d)(1)(B)(i)(I) requires the DoD to

have found that SASAC – through Chengtong – has some control over DJI, the Court cannot

conclude that the DoD's finding is supported by substantial evidence.  As discussed above, the

only evidence in the record supporting the DoD's conclusion is that Chengtong at some point

purchased an unspecified number of DJI shares and that it continued to hold some or all of these

shares until at least October 2024.  Because there is no evidence concerning the size of

Chengtong's ownership stake, "reasonable minds would be hard-pressed to accept as adequate

the Department of Defense's . . . determination."  <u>See</u> <u>Xiaomi Corp. v. Dep't of Def.</u>, Civil

Action No. 21-0280 (RC), 2021 WL 950144, at *7; <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S.

at 103.

        The DoD's primary argument in response is that the Court should give significant

deference to the DoD's finding because it relates to national security, and because evidence of

DJI's ownership is difficult to discern.  <u>See</u> Defs.' Reply at 13-14.  The Court acknowledges the

heightened deference that is owed to the DoD in matters of national security, and is further

cognizant of the fact that determining DJI's ownership presents difficulty because DJI is a

privately-owned company.  Id. at 14.  With that said, deference to the DoD "does not mean

acquiescence."  Presley v. Etowah Cnty. Comm'n, 502 U.S. at 491, 508 (1992).  And while

determining Chengtong's precise ownership stake may be difficult, the DoD does not point to

any other evidence in the record suggesting that Chengtong's ownership stake amounts to a

controlling position, such as circumstantial evidence reflecting that Chengtong is involved in

DJI's operational decisions.

The Court cannot conclude that the DoD's finding that "DJI is indirectly owned

by the Chinese Communist Party," see Decision at 8 (capitalization omitted), is supported by

substantial evidence.  The Court therefore rejects the DoD's arguments based on

Section 1260H(d)(1)(B)(i)(I).

## V.  DUE PROCESS

### A.  *Legal Standard*

The Due Process Clause of the Fifth Amendment requires that no person be

deprived of life, liberty, or property without due process of law.  See Mathews v. Eldridge, 424

U.S. 319 (1976).  "'The fundamental requisite of due process of law is the opportunity to be

heard' at 'a meaningful time and in a meaningful manner.'"  Alaska Commc'ns Sys. Holdings,

Inc. v. Nat'l Lab. Rels. Bd., 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting Goldberg v. Kelly, 397

U.S. 254, 267 (1970)).  The Fifth Amendment requires only that a person receive his or her due

process, not every procedural device that he or she may claim or desire.  Kropat v. FAA, 162

F.3d 129, 132 (D.C. Cir. 1998). Before assessing what process was due to DJI, the Court must

"first determine whether constitutional safeguards apply at all, i.e., whether a private party has a

property or liberty interest that triggers Fifth Amendment due process protection."  Reeve

Aleutian Airways, Inc. v. United States, 982 F.2d 594, 598 (D.C. Cir. 1993).

### B.  Protected Liberty Interest

DJI presents two theories as to how the DoD has deprived it of a protected liberty interest:  first, DJI's placement on the Section 1260H List deprives it of the ability – beginning in 2026 – to bid on DoD contracts; and second, DJI's placement on the Section 1260H List has caused it reputational harm that has interfered with its ability to conduct business (a "stigma-plus" injury).  See Pls.' Mem. at 11-12, 18-20.  The Court concludes that neither of these injuries is sufficient to establish that DJI has been deprived of a protected liberty interest.

As to DJI's inability to obtain certain government contracts beginning in 2026, it is worth noting at the onset that DJI appears to abandon this basis in its reply memorandum, focusing instead on its "stigma-plus" injury.  See Pls.' Reply at 9-10.  Indeed, at oral argument, DJI articulated its due process claim exclusively from the standpoint of a "stigma-plus" injury.  Tr. 37-38.  Setting aside the issue of whether DJI actually intends to pursue a due process claim based solely on its inability to pursue certain government contracts, such a claim would fail for at least two reasons.  First, the desire to obtain future government contracts is generally considered insufficient to establish that a plaintiff has been deprived of a protected property interest.  See Nat'l Urb. League v. Trump, Civil Action No. 25-0471 (TJK), 2025 WL 1275613, at *17 (D.D.C. May 2, 2025) ("'[C]ourts have resisted' applying 'due-process principles to government contracts' outside 'the employment context.'") (quoting New Vision Photography Program, Inc. v. District of Columbia, 54 F. Supp. 3d 12, 29 (D.D.C. 2014)); see also Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev., 421 F.3d 1, 9 (1st Cir. 2005) ("By the same token, the plaintiffs' dashed hopes of receiving future government work, without more, cannot yield a constitutionally protected property interest.").  Second, DJI has not alleged that it has any intention on bidding on these contracts, making any such injury associated with the inability to bid on the contracts too

"hypothetical" to serve as a basis for a constitutional claim.  See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) ("We have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient") (citations and internal punctuation omitted); see also Defs.' Mem. at 13-14.[20]

Turning to the asserted "stigma-plus" injury, the D.C. Circuit has explained that the stigma-plus rule is satisfied "where plaintiffs show, in addition to reputational harm, that (1) the government has deprived them of some benefit to which they have a legal right . . . or (2) the government-imposed stigma is so severe that it broadly precludes plaintiffs from pursuing a chosen trade or business."  Gen. Elec. Co. v. Jackson, 610 F.3d 110, 121 (D.C. Cir. 2010) (internal citations and quotations marks omitted).  The General Electric case is instructive.  In that case, the court of appeals drew a distinction between a "direct" deprivation of a property interest – i.e., a government action "extinguishing or modifying a right recognized by state law" – and a "consequential" deprivation – for example, "injuries resulting not from [an agency's action], but from market reactions to it."  Gen. Elec. Co. v. Jackson, 610 F.3d at 113-14, 119-20 (cleaned up).  As to the latter, the court of appeals stated that a plaintiff must show more than mere reputational injury and consequential harms stemming from that injury; it must show that "the government-imposed stigma is so severe that it 'broadly precludes' plaintiffs from

---

[20]     DJI cites to the D.C. Circuit's decision in Dynalantic Corp. v. Dep't of Def. for the proposition that that it need only show that DJI has been deprived "of [the] opportunity to compete for Defense Department contracts."  See Pls.' Reply at 10 (quoting Dynalantic Corp. v. Dep't of Def., 115 F.3d 1012, 1016 (D.C. Cir. 1997)).  In Dynalantic Corp. v. Dep't of Def., however, the appellant represented that "it is able and ready to bid on contracts" but is unable to do so in light of the DoD program at issue in that case.  See Dynalantic Corp. v. Dep't of Def., 115 F.3d at 1016.  Accordingly, Dynalantic Corp. v. Dep't of Def. does not support DJI's position that it can state a due process claim "regardless of any current intent to bid" on the contracts at issue.  See Pls.' Reply at 10.

46

pursuing 'a chosen trade or business." Id. at 121 (quoting Trifax Corp. v. District of Columbia,

314 F.3d 641, 644 (D.C. Cir. 2003)).

       Judge Mehta considered this due process argument in a case involving the

sanctioning of a plaintiff, who argued that due process protections were required because his

placement on the Section 241 Report – and the associated reputational harm – resulted in the

"closure of his bank accounts." See Deripaska v. Yellen, Civil Action No. 19-0727 (APM), 2021

WL 2417425, at *15 (D.D.C. June 13, 2021), aff'd, No. 21-5157, 2022 WL 986220 (D.C. Cir.

Mar. 29, 2022).[21]  Judge Mehta rejected the plaintiffs' claim, reasoning:

> Deripaska has asserted a "consequential" injury – that is, his injury
> does not result from Defendants "extinguishing or modifying a right
> recognized by state law," but instead arises from a claim that
> Defendants' actions have so stigmatized him as to deprive him of a
> property interest.  See Gen. Elec. Co. v. Jackson, 610 F.3d 110,
> 119-20 (D.C. Cir. 2010) (cleaned up).  As a rule, harm to "reputation
> alone, apart from some more tangible interests," is not "by itself
> sufficient to invoke the procedural protection of the Due Process
> Clause."  Paul v. Davis, 424 U.S. 693, 701 (1976).  In addition to
> establishing that he faces a stigma from the Section 241 Report,
> Deripaska must prove that either "(1) the government has deprived
> [him] of some benefit to which [he has] a legal right . . . or (2) the
> government-imposed stigma is so severe that it broadly precludes"
> him from pursuing his chosen business.  Gen. Elec. Co., 610 F.3d
> at 121.  Put differently, Deripaska must establish that the
> government-imposed stigma "involve[d] some tangible change of
> status vis-à-vis the government."  Doe v. U.S. Dep't of Justice, 753
> F.2d 1092, 1108-09 (D.C. Cir. 1985).
>
> He fails to do so. Deripaska has not shown that he had a protected
> right to maintain the bank accounts he alleges were closed or that he
> is precluded from pursuing his chosen business or banking
> relationships as a result of his Section 241 Report listing.  See Gen.
> Elec. Co., 610 F.3d at 121.  Deripaska thus has not identified a
> sufficient tangible interest protected by the Due Process Clause. His
> due process claim therefore fails.

---

[21]    The Section 241 Report was a report to Congress pursuant to Section 241 of the
Countering America's Adversaries Through Sanctions Act ("CAATSA"), which imposed
sanctions on Russia, Iran, and North Korea.  See Deripaska v. Yellen, 2021 WL 2417425, at *2.

See Deripaska v. Yellen, 2021 WL 2417425, at *15-16.

Under General Electric, in order for DJI to show that it is entitled to due process protections related to the Section 1260H designation decision, it must show that "the government-imposed stigma is so severe that it 'broadly precludes' plaintiffs from pursuing 'a chosen trade or business.'" Gen. Elec. Co. v. Jackson, 610 F.3d at 121 (citation omitted). DJI has not satisfied this burden. DJI argues that the stigma created from being on the Section 1260H List "precludes [it] from pursuing a chosen trade or business." See Gen. Elec. Co. v. Jackson, 610 F.3d at 121; see also Taylor v. Resolution Tr. Corp., 56 F.3d 1497, 1506, as amended, 66 F.3d 1226 (D.C. Cir. 1995); Lewis v. Mauskopf, Civil Action No. 22-0189 (CKK), 2022 WL 16744929, at *6 (D.D.C. Nov. 7, 2022). DJI maintains that it has been "forced [to] exit from critical governmental and private markets" because the prohibitions preventing DoD "from using or procuring products or services of [Chinese military companies]" "deters both existing and potential partners . . . that rel[y] on federal work [ ] from engaging with DJI." See Pls.' Reply at 10. In its reply brief, DJI cites to several examples of its clients who have terminated business relationships with DJI in response to its placement on the Section 1260H List. See Pls.' Reply at 9.[22]

While the exact nature of the impact on DJI's business is not entirely clear, the harms created from DJI's reputational injury do not appear "so severe that [they] 'broadly preclude[]' plaintiff[] from pursuing 'a chosen trade or business.'" Gen. Elec. Co. v. Jackson, 610 F.3d at 121 (quoting Trifax Corp. v. District of Columbia, 314 F.3d 641, 644 (D.C.

---

[22]    The DoD argues that the Court cannot consider this evidence both because it is outside of the record and because it is impermissible hearsay. See Defs.' Reply at 9 & n.3.

Cir. 2003)); see Paul v. Davis, 424 U.S. 693, 708-09 (1976) (holding that a sheriff's inclusion of [plaintiff's] name and photograph on a flyer captioned "Active Shoplifters" implicated no due process interest).[23] Because DJI has failed to show that it has been deprived of a protected liberty or property interest, the defendants' motion for summary judgment as to DJI's due process claim must be granted.

For the reasons explained in this Opinion, the Plaintiffs' Motion for Summary Judgment [Dkt. No. 31] is hereby DENIED and Defendants' Cross-Motion for Summary Judgment [Dkt. No. 36] is GRANTED.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9|26|25

---

[23]     DJI notes that Judge Contreras in Xiaomi and Luokung – while not reaching the plaintiffs' due process claims – remarked that there were "serious concerns" related to the defendants' violation of the plaintiffs' due process rights. See Xiaomi Corp. v. Dep't of Def., 2021 WL 950144, at *8 n.8; Luokung Tech. Corp. v. Dep't of Def., 538 F. Supp. 3d at 191 n.13. From a due process standpoint, however, Xiaomi and Luokung are distinguishable from the instant case. In Judge Contreras's cases, designation as a "Communist Chinese military company" carried significant deprivations, including a prohibition on trading the plaintiffs' stock and a requirement that "U.S. persons" divest their holdings in the stock. See Xiaomi Corp. v. Dep't of Def., Civil Action No. 21-0280, Amended Complaint (D.D.C. Feb. 5, 2021) [Dkt. No. 9] ¶ 1 ("As a result of that designation, U.S. persons – including the individual Plaintiffs here – will no longer be able to purchase publicly traded Xiaomi securities or derivatives of those securities as of March 15, 2021, and must divest their holdings by January 14, 2022."). There can be little doubt that such significant deprivations implicate due process. It is unclear, however, how these decisions offer any support to DJI given that DJI primarily bases its due process claim on a "stigma-plus" theory rather than on a direct deprivation theory, as was the case in Xiaomi and Luokung.